STATE, EX REL. NEILL, RELATOR, *v.* JAMES M. PAGE, RESPONDENT.

[Submitted October 14, 1897.   Decided October 25, 1897.]

*Statutes—Repeal—Amendment—Titles of Acts—State Land Agent—Vacancy in Office—Power of Governor to Fill—Commissions.*

1.  Political Code, Section 341, provided that "the State Land Agent is appointed by the Governor, with the consent of the State Board of Land Commissioners, and holds his office during the pleasure of the board." Section 470 provides that "the Governor, with the consent of the State Board of Land Commissioners, must appoint a State Land Agent, who shall hold his office at the pleasure of the board." Section 472 provides that "the annual salary of the State Land Agent for all services rendered in any capacity whatever, is $3,000." *Held,* that Section 341 was repealed and Sections 470 and 472 were amended by Act March 4, 1897, entitled "An act repealing Section 470 and 472, Article IX, Chapter III, Title I, Part III, of the Political Code, relating to the appointment of the State Land Agent and his annual salary," which act amended

Section 470 so as to read: "The Governor with the consent of the Board of Land Commissioners must appoint a State Land Agent who shall hold his office for the term of four years, or until his successor shall be appointed and qualified;" and amended Section 472 so as to provide: "The annual salary of the State Land Agent for the services rendered in any capacity whatever is the sum of $2,500. The salary of the State Land Agent shall be paid out of the funds derived from the sale of state lands and shall be apportioned among the several land grants to the state according to the amount of such lands selected under each of said grants and shall be determined by the State Board of Land Commissioners."

2.  The use of the word "repealing" in the title of such act, instead of "amending," does not violate Constitutional Article 5, Section 23, since the other words of the title clearly point out the sections, chapter, title and code and subject to be affected by the provisions of the bill.

3.  Political Code, Sections 470, 472, as amended by Act March 4, 1897, provide that the Governor, with the consent of the Board of Land Commissioners, must appoint a State Land Agent, who shall hold his office for the term of four years, or until his successor is appointed and qualified, and fix his annual salary, and provide how it shall be paid. Section 1101 provides that an office becomes vacant in the event, before the expiration of the term, of the death of the incumbent, "his resignation," etc. Section 1100 provides that resignations must be in writing, and made (subsection 5) "by all other appointed officers to the body or officer that appointed them." Such section does not specify the State Land Agent, or to whom his resignation shall be made. *Held*, that where the State Land Agent sent his resignation in writing to the Governor, and the latter accepted it, there was a vacancy in the office, though the board did not consent to the acceptance.

4.  Political Code, Section 470, as amended by Act March 4, 1896, provides that the Governor, with the consent of the Board of Land Commissioners, must appoint a State Land Agent, etc. Section 1104 provides that when any office becomes vacant, and no mode is provided by law for filling it, the Governor must fill it by granting a commission to expire at the end of the next legislative assembly, or at the next election by the people. *Held* that, where a vacancy occurs in the office of State Land Agent, it may be filled by appointment by the Governor, without the consent of the Board of State Land Commissioners, by granting a commission to expire at the end of the next legislative assembly; Section 470 making no reference to vacancies, and there being no other provision for filling a vacancy in such office.

5.  Political Code, Section 994, providing that every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified, applies only where the term of office of an incumbent has expired, and not to a case of vacancy caused by resignation.

6.  Political Code, Section 1002, provides that the Governor must commission all officers appointed by him. Section 1003, and Constitutional Article 7, Section 18, require the commissions of all officers commissioned by the Governor to be signed by the Governor, and countersigned or attested by the Secretary of State, under the great seal. *Held*, that where the Governor properly appoints an officer, and issues him a proper commission, the refusal of the Secretary of State to countersign it and seal it with the great seal does not affect the validity of the appointment.

ORIGINAL *quo warranto* proceeding by the state, on the relation of Henry Neill, against James M. Page, to try the title to the office of state land agent, claimed by both relator and defendant.    Judgment for relator.

Statement of the case by the justice delivering the opinion.

*Quo warranto* to try the title to the office of state land agent.

The defendant, Page, on July 31, 1895, was appointed State Land Agent by the Governor of Montana, and on the same day was confirmed by the State Board of Land Commissioners; and, although no commission was ever issued to him by the said board or by the Governor, he duly qualified and entered upon the discharge of his duties. On March 1, 1897, the Governor requested the resignation of said defendant; and in pursuance of said request, on March 7, 1897, the defendant tendered his resignation in writing, to take effect at the Governor's discretion. On March 31, 1897, the Governor presented to the Board of Land Commissioners the name of Henry Neill, the relator, as State Land Agent for confirmation, and, on the confirmation of said Neill, the board were evenly divided. Thereafter, on July 22, 1897, the Governor again nominated Henry Neill for said office, but the board were again evenly divided on his confirmation. On July 30, 1897, the Governor, in writing, accepted the resignation of defendant, Page, as State Land Agent, to take effect August 7, 1897. The Board of Land Commissioners did not consent to the request for or the acceptance of the resignation of Page. On August 9, 1897, the Governor appointed relator, Neill, as State Land Agent, claiming there was a vacancy in said office, and thereupon signed and issued to him a commission; but the said commission did not and does not bear the seal of the state, by reason of the refusal of the Secretary of State to attach the same thereto. The said commission to the relator, Neill, authorizes him to hold the said office until the end of the next legislative assembly. On the same day the Governor notified the Secretary of Board of Land Commissioners that he had accepted the resignation of Page, and had appointed Neill. The board has never consented to the appointment of Neill, and has never confirmed his appointment. On the day of his appointment, Neill, the relator, executed his bond, and assumed, and still assumes, to perform the duties of the office of State Land Agent so far as permitted to do so by the State Board of Land Commissioners and the said defendant, Page.

On August 16, 1897, at a meeting of the Board of Land.

Commissioners, the Governor's communication respecting the acceptance of the resignation of Page and the appointment of Neill was read, and a motion was made and seconded to consider the appointment of Neill as to confirmation or rejection; but the Governor declined to entertain the motion, for the reason that the appointment of Neill so made by him was not intended to be considered by the board or to be acted upon by it. Nevertheless, two members of the board had themselves recorded in the minutes of the proceedings as voting against the confirmation of Neill. At the same meeting a resolution was offered to the effect that Page should be recognized as State Land Agent until it was determined by the courts who was qualified to perform the duties of that office. The governor declared this motion out of order, whereupon an appeal was taken from this ruling, and upon said appeal said resolution was declared in order, and was carried.

Page, notwithstanding his resignation, has continued to perform the duties of the office, and refuses to turn over possession of the books, etc., of said office to the relator, Neill.

The defendant, admitted that the relator, Neill, was appointed State Land Agent, but denied that he was duly appointed, because the governor had no right to appoint; and defendant further averred that he is discharging the duties of the office until his successor is legally appointed and qualified, and denied that Neill ever had the right to the incumbency of said office.

*Carpenter & Carpenter* and *Toole, Bach & Toole*, for Relator.

*C. B. Nolan*, Attorney General, for Respondent.

HUNT, J.—The office of State Land Agent not having been created, and the mode of appointment of the incumbent to such office not being controlled by the constitution of the state, we must look to the statutes to determine the principal question raised by this proceeding.

The sections of the Political Code which must be considered are as follows :

Section 341 : "The State Land Agent is appointed by the Governor, with the consent of the State Board of Land Commissioners, and holds his office during the pleasure of the board."

Section 470 : "The governor, with the consent of the State Board of Land Commissioners, must appoint a State Land Agent, who shall hold his office at the pleasure of the board."

Section 472 : "The annual salary of the State Land Agent for all services rendered in any capacity whatever, is three thousand dollars."

By an act approved March 4, 1897, entitled "An Act repealing Section 470 and 472, Article IX, Chapter III, Title I, Part III, of the Political Code, relating to the appointment of the State Land Agent and his annual salary," Sections 470 and 472 were amended so as to read as follows : Section 470 : "The Governor with the consent of the Board of Land Commissioners must appoint a State Land Agent who shall hold his office for the term of four years, or until his successor shall be appointed and qualified." Section 472 : "The annual salary of the State Land Agent for the services rendered in any capacity whatever is the sum of twenty-five hundred dollars. The salary of the State Land Agent shall be paid out of the funds derived from the sale of state lands and shall be apportioned among the several land grants to the state according to the amount of such lands selected under each of said grants and shall be determined by the State Board of Land Commissioners."

Before passing to the further sections of the code bearing upon this controversy, we may say that we regard the act of 1897 as amending Sections 470 and 472 (Sutherland on Statute Construction, § 133), and as repealing Section 341.

The relator's counsel suggests that the law may violate Section 23 of Article 5 of the Constitution, inasmuch as it is a law amending the sections referred to, instead of being a repeal law, as its title purports. But we cannot think the misuse of the word "repeal" in the title must result in over-

throwing the whole law, inasmuch as the other words of the title of the bill very clearly point out the sections, chapter, title, code and subject to be affected by the provisions of the bill. We shall therefore hold that the law of 1897 is valid, and was in force when the relator herein was appointed State Land Agent by the Governor.

By comparing the provisions as amended by the 1897 Act with Sections 470, 472, and 341, *supra*, it will be seen that the Legislature had in view two objects, and two only, by the amendments of 1897 : First, to fix the tenure of office of the State Land Agent for a term of four years, or until his successor should be appointed and qualified; and, secondly, to reduce the salary, and provide how such salary should be paid. It never was meant, however, to change the method provided for the appointment of the officer himself where no vacancy occurs, because throughout the original sections and the amended one it is provided that the Governor, with the consent of the Board of Land Commissioners, must appoint the State Land Agent.

Taking up the further provisions made by the law for commissioning officers, whether appointed or elected, we find that by Section 1002 of the Political Code "the Governor must commission : (1) All officers elected by the people, whose commissions are not otherwise provided for. (2) All officers of the militia. (3) All officers appointed by the Governor, or by the Governor with consent of the Senate. (4) United States senators."

Section 1003 of the Political Code provides that "the commissions of all officers commissioned by the Governor must be issued in the name of the state, and must be signed by the Governor and attested by the Secretary of State, under the great seal."

The Constitution (Article 7, § 18) requires all commissions to be signed by the Governor and countersigned by the Secretary of State.

The Political Code provides how vacancies may be made in offices. Section 1101 is substantially as follows : "An office

becomes vacant on the happening of either of the following events before the expiration of the term :   First, death of the incumbent; second, his insanity; third, his resignation; fourth, removal from office; fifth, ceasing to be a resident; sixth, absence from the state without permission beyond the period allowed by law," etc.

The code also deals particularly with the manner of resigning, and it is provided by Section 1100 as follows:   "Resignations must be in writing and made as follows :   (1) By the Governor and Lieutenant-Governor, to the Legislative Assembly, if it is in session; and if not, then to the Secretary of State.   (2) By all officers commissioned by the Governor, to the Governor.   (3) By Senators and Members of the House of Representatives, if the Legislative Assembly is not in session, to the Governor; if it is in session, to the presiding officer of the branch to which the member belongs, who must immediately transmit the same to the Governor.   (4) By all county and township officers not commissioned by the Governor, to the Clerk of the Board of Commissioners of their respective counties.   (5) By all other appointed officers, to the body or officer that appointed them.   (6) In all cases not otherwise provided for, by filing the resignation in the office of the Secretary of State."

Section 994 of the Political Code contains the following : "Every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified."

The above provision is one usually found in the codes of the states, being based upon the requirements of public policy, which demands that if, from any cause, the new incumbent of an office fails to qualify, or if there has not been an election of any person, there should not be a vacancy in the office, and a consequent suspension of the public business.

Other sections in relation to the mode of filling a vacancy are as follows :   Section 1104 :   "When any office becomes vacant, and no mode is provided by law for filling such vacancy, the Governor must fill such vacancy by granting a com-

mission to expire at the end of the next Legislative Assembly or at the next election by the people.'' Section 1105 : ''Vacancies occurring in office during the recess of the Legislative Assembly, the appointment of which is vested in the Governor and Senate, or in the Legislative Assembly, must be filled by appointment made by the Governor; but the person so appointed can only hold the office until the adjournment of the next session of the Legislative Assembly.''

With the foregoing statutes before us, we inquire whether there was a vacancy in the office of State Land Agent on the 7th of August, 1897.

An office, says the statute (Section 1101, *supra*), becomes vacant by the resignation of the incumbent before the expiration of the term. On March 7, 1897, the defendant, Page, tendered his resignation in writing to the Governor, to be effective at the Governor's discretion. It is too plain for argument that Page's deliberate intention, as manifested by his letter, was to retire from the office whenever the governor saw fit to have him do so. The governor exercised the discretion so expressly given him by Page, and, in writing, accepted his resignation, to take effect August 7. Upon that date, therefore, Page ceased to be State Land Agent, unless his resignation was invalid or ineffective. The Attorney General argues that the Secretary of State, and not the Governor, was the proper person to whom Page should have tendered his resignation. Under Section 1002, *supra*, the State Land Agent should properly be commissioned by the Governor. He is a state official appointed by the Governor, ordinarily with the consent of the State Land Board; and it is in accord with the spirit of the law that such an official should bear a commission signed by the Governor, as evidence of his appointment. It nevertheless appears that Page had never been formally commissioned, but whether he was or not is immaterial just now for this reason. It being conceded that he was appointed by the Governor in 1895, and that he was confirmed and duly qualified, for the purposes of tendering his resignation, he at least stood in the attitude of one not commissioned,

yet of one whom the Governor had appointed, and who therefore legally tendered his resignation (under Section 1100, subsection 5, *supra*,) to the officer who appointed him. It may possibly be that the office became vacant by force of the approval of the act of 1897, heretofore cited, and that Page was ousted at once. If such was the case, Page has no standing before the court. But we find it unnecessary to inquire at length into that phase of the matter. Neill not having qualified or assumed to enter upon the discharge of the duties of the office prior to August 9th, two days after Page's resignation was accepted, Page's rights before August 9th are not of interest to Neill, unless they affect his title to the office. We hold, though, that Page was not thrown out, and hence that no vacancy was created as above indicated, and that Page held rightfully until his resignation was accepted, but that, by a complete voluntary resignation before another person was appointed, a vacancy was created in the office. By a resignation before the expiration of a term, as provided in Section 1101, *supra*, is meant a resignation before the end of a fixed time, or before the expiration of the time during which an official has a right to serve.

We next inquire, who had the power to fill the vacancy.

The statute (Section 470, *supra*) gives the Governor power to appoint a State Land Agent. The Governor must appoint. The appointment is with the consent of the board, but an appointment is a separate act from a consent to the appointment. Consent is in certain cases necessary to give effect to the appointment, and is obtained from the board by confirmation; while an appointment comes from the governor. But, in the case of a vacancy occurring in an office, the law has made special provision for filling it. Section 470 makes no reference whatever to vacancies. We therefore turn to other statutes to see what provision, if any, has been made for such contingencies, and find that Section 1104 exactly covers the case, by providing that when any office becomes vacant, and no mode is provided by law for filling such vacancy, the Governor (without the consent of any board or person) must fill

the vacancy by granting a commission to expire at the end of the next Legislative Assembly, or at the next popular election. This section certainly applies to all cases of vacancies where no mode is provided by law for filling the same. We are therefore forced to conclude that, while the consent of the board to an appointment by the Governor is necessary where a person is appointed to succeed one whose term has expired, where a vacancy is to be filled the special provision relating to vacancies obtains, and the Governor alone must appoint, by granting a commission until the end of the next session of the Legislature.

The Attorney General asks us to consider the general purposes of the law in providing for the confirmation of the State Land Agent by the State Land Board, and argues that that official is subject to the control of the board, and that, if it be the law that the Governor may appoint without the consent of the board, a situation may arise where the board would direct a certain policy to be pursued, and yet be unable to carry out that policy by reason of the refusal of the agent to execute the orders of the board.

Serious differences do occasionally arise between the executive officers of a government. They are often overcome by the exercise of discretion and a spirit of fairness and toleration among the officers involved, and thus the courts are spared the disagreeable duty of settling such disagreements. But, however that may be, so far as the case before us is concerned, in the absence of legislation which provides another mode of appointment of a State Land Agent, or which otherwise will render complications impossible, the court can only interpret the laws that do exist, and leave the remedy for defects to the appropriate branch of the government. Besides, in our minds, much of the force of the comments upon possible complexities of the situation is met and overthrown by the counter argument that the dangers that may result from inharmonious relations between the several officials of the State Land Board are apt to be far less significant than might be the consequences of having no officer at all to select lands

and personally watch over the vast land interests of the state. Doubtless, it was to meet this very danger of having no incumbent at all that the Legislature have given the Governor power to appoint in case of a vacancy.

Section 994, providing that every officer must continue to discharge the duties of his office, although his term has expired, until his successor has qualified, is applicable only to a case where the term of office of an incumbent has expired. It does not refer to a case of vacancy caused by a resignation. Such is the decision upon a similar statute of New York, and we think it the proper construction of the language of our statute. (*Olmsted* v. *Dennis,* 77 N. Y. 378.)

Believing, therefore, that the Governor had the power to fill the vacancy caused by Page's resignation, we are easily led to a further conclusion, that Neill was legally appointed to the office, and is qualified to hold the same until the end of the next legislative session. His commission was issued by the Governor, and properly prescribed the time during which he could serve. The commission ought to have been countersigned by the Secretary of State, under Section 18 of Article 7 of the Constitution (heretofore quoted), and been sealed with the great seal of the state; but the refusal of the latter official to do the acts enjoined upon him cannot affect the validity of the appointment, or destroy the efficacy of the Governor's acts.

Finally, our judgment is that the defendant has not been en titled to the office of State Land Agent since the day the Governor accepted his resignation, and that relator is entitled thereto, and has been so entitled since the day he qualified therefor. It will be so ordered.

PEMBERTON, C. J., and BUCK, J., concur.