Submitted January 19, 1959, motion for judgment on the pleadings allowed, judgment for defendant Howell Appling, Jr., granted, January 21, 1959

## STATE OF OREGON ex rel O'HARA v. APPLING ET AL

334 P. 2d 482

*Robert Y. Thornton,* Attorney General of Oregon, *E. G. Foxley,* Assistant Attorney General of Oregon, and *Hattie Bratzel,* District Attorney for Marion county, argued the cause for plaintiff. On the brief was Robert Y. Thornton, Attorney General of Oregon.

*Roy F. Shields* and *Lamar Tooze,* Portland, argued the cause for defendants. With them on the brief was Lamar Tooze, Jr., Portland.

LUSK, J.

This is an original proceeding in quo warranto brought to determine who is entitled to hold the office of Secretary of State of the State of Oregon. We took

jurisdiction pursuant to amended Art VII, § 2, Constitution of Oregon, because of the public importance of the question and the necessity for its speedy final determination.

The case is before us on motion of the defendants for judgment on the pleadings. The complaint was filed by the state on the relation of David O'Hara on the information of Hattie Bratzel, District Attorney of Marion county, and Robert Y. Thornton, Attorney General of Oregon. The defendants are Howell Appling, Jr., who is charged with usurping the office of Secretary of State, and Mark O. Hatfield, who was elected Secretary of State on November 6, 1956 for a term of four years and while holding that office was elected Governor at the general election held November 4, 1958 and took the oath of office on January 12, 1959. Mr. Appling claims the office of Secretary of State under appointment by Governor Hatfield on January 12, 1959. Mr. O'Hara, the relator, claims it under appointment on January 7, 1959 by the Honorable Robert D. Holmes who was Governor at the time such alleged appointment was made. Mr. O'Hara's commission was transmitted by Governor Holmes to Secretary of State Hatfield the following day, but the latter refused to attest it. Both appointments are for the unexpired term of Mark O. Hatfield as Secretary of State.

Under date of January 8, 1959, Mr. Hatfield transmitted to Governor Holmes the following letter:

"Honorable Robert D. Holmes
  Governor of Oregon
  Salem, Oregon

Dear Sir:
  The unofficial election returns and abstracts of votes for the candidates for the office of Governor

of the State of Oregon at the general election held November 4, 1958, indicate that I received a majority of such votes.

Anticipating that these results will be confirmed by the publication of the official returns, and it being my intention to accept such office, I hereby resign my office of Secretary of State of the State of Oregon effective upon my qualification for the office of Governor of the State of Oregon.

Dated at Salem, Oregon, this 8th day of January, 1959.

s/ Mark O. Hatfield  "

On January 9, 1959, Governor Holmes wrote Mr. Hatfield as follows:

"                                   January 9, 1959

Honorable Mark O. Hatfield
Secretary of State
Capitol Building

Dear Mr. Hatfield:
This is to inform you that I have been advised by Honorable Robert Y. Thornton, Attorney General of the State of Oregon, in his opinion number 4308, dated January 9, 1959, that the letter you submitted to me dated January 8, 1959, does not comply with the requirements of the Constitution and statutes of our State and therefore is not a valid resignation; and that I have no authority to accept the document as your resignation.

You are hereby advised that I am declining to accept your letter above-mentioned as a resignation from the office of Secretary of State of the State of Oregon.

Very truly yours,
/s/ ROBERT D. HOLMES
Governor  "

On January 12, 1959, at 10:30 à. m., Mr. O'Hara took the oath of office as Secretary of State and filed a bond pursuant to the provisions of ORS 177.010 and at 10:35 a. m. of said day, Governor Holmes approved the bond.

On January 12, 1959, at about 2 o'clock p. m., the election of Mr. Hatfield to the office of Governor was officially published by the Speaker of the House of Representatives at a joint session of the senate and house of representatives of the 50th legislative assembly of Oregon pursuant to Art V, § 4, Oregon Constitution; thereafter, at about 2:36 p. m. on said day, Mr. Hatfield took the oath of office as Governor; and at about 2:38 p. m. of said day, Mr. Hatfield issued a commission to Mr. Appling to be Secretary of State and thereafter, Mr. Appling took the oath of office and gave the required bond and took possession of the office.

The foregoing facts, stated with somewhat more detail, all appear in the complaint.

The relief sought is not only that the court adjudge that Mr. Appling has usurped the office of Secretary of State, but also that it declare "the respective rights and status of relator and each of the defendants [i.e. Hatfield as well as Appling] to the office of Secretary of State."

The defendants filed an answer which admits all the controlling facts as above stated. Their motion for judgment on the pleadings therefore presents a question of law, to-wit, Did former Governor Holmes or present Governor Hatfield have the right under the constitution and statutes of Oregon to appoint a successor to Hatfield as Secretary of State? The answer depends on when, if at all, a vacancy arose in the office of Secretary of State.

The plaintiff cites certain provisions of the Oregon Constitution and certain statutes as supporting its position. The constitutional provisions are as follows:

Article II, § 10:

"No person holding a lucrative office or appointment under the United States or under this state shall be eligible to a seat in the legislative assembly; nor shall any person hold more than one lucrative office at the same time, except as in this constitution expressly permitted * * *."

Article II, § 11:

"No person who may hereafter be a collector or holder of public moneys shall be eligible to any office of trust or profit, until he shall have accounted for and paid over, according to law, all sums for which he may be liable."

Article V, § 3:

"No member of congress, or person holding any office under the United States, or under this state, or under any other power, shall fill the office of governor, except as may be otherwise provided in this constitution."

Article XV, § 1:

"All officers, except members of the legislative assembly, shall hold their offices until their successors are elected and qualified."

The statutes cited are the following:

"ORS 236.320. Resignation shall be made as follows:

"(1) By the Secretary of State * * * to the Governor."

"ORS 177.010. Oath and Bond. The Secretary of State shall, within 20 days after receiving notice of his election, and before entering upon the duties of his office, take and subscribe the oath required by the constitution, and give a bond, with sufficient sureties, to the State of Oregon, in the sum of

$10,000, conditioned for the faithful discharge of the duties of his office as Secretary of State and as Auditor, and that he will deliver over to his successor in office, or to any other person authorized by law to receive the same, all moneys, books, records and all papers pertaining to his office. The bond shall be approved by the Governor and, together with the oath of office, shall be preserved in the executive office."

The plaintiff argues that under Art XV, § 1 of the Oregon Constitution, Mr. Hatfield continued to hold his office as Secretary of State at the time that he took the oath of office as Governor, because at that time his successor had not been appointed and qualified. Hence, the state says that he is holding more than one lucrative office at the same time in violation of Art II, § 10, and is filling the office of Governor in violation of Art V, § 3.

The defendants say, first, that Mr. Hatfield did resign the office of Secretary of State by his letter to Governor Holmes above quoted, and that his resignation became effective when he took the oath of office as Governor, and, second, that it was not necessary for him to resign in that manner because, under the doctrine of implied resignation, he ceased to be Secretary of State at the very instant that he took the oath of office as Governor.

The doctrine of implied resignation is thus stated in 100 ALR 1170:

"* * * if the holding of two offices by the same person, at the same time, is inhibited by the Constitution or statute, a forbidden incompatibility is created similar in its effect to that of the common law, and, as in the case of the latter, it is well settled by an overwhelming array of authority that the acceptance of a second office of the kind prohibited

operates, ipso facto, to absolutely vacate the first office."

The multitude of decisions from all over the United States and from England cited in the extensive annotation beginning at 100 ALR 1162 fully bears out the foregoing statement that this doctrine has the support of "an overwhelming array of authority." It had the approval of a dictum in *Holman v. Lutz*, 132 Or 185, 282 P 241, 284 P 825, and was one of the grounds of decision in *State v. Beveridge*, 88 Or 334, 337, 171 P 1173. The basis of the doctrine is well stated in the frequently quoted language of the Supreme Court of Maine, in *Stubbs v. Lee*, 64 Me 195, 198:

> "Where one has two incompatible offices, both cannot be retained. The public has a right to know which is held and which is surrendered. It should not be left to chance, or to the uncertain and fluctuating whim of the office-holder to determine. The general rule, therefore, that the acceptance of and qualification for an office incompatible with one then held is a resignation of the former, is one certain and reliable as well as one indispensable for the protection of the public."

As the offices of Secretary of State and Governor are incompatible, it would follow that if the doctrine of implied resignation is still the law of Oregon, Mr. Hatfield became Governor when he took the qualifying oath, and at that instant a vacancy was created in the office of Secretary of State, Mr. Holmes ceased to be Governor, and Governor Hatfield was invested with the constitutional authority to appoint his successor. ORS 176.010 and 176.020.

The Attorney General contends that the doctrine of implied resignation was repudiated by this court in the case of *State ex rel Hayden v. Hill*, 181 Or 585, 184

P2d 366. In that case, we held that a state representative could not qualify as a member of the State Fish Commission without first having filed a written resignation of his legislative office with the Secretary of State. It was conceded that to hold both offices would be in violation of Art III, § 1, the separation-of-powers provision of the state constitution[1]. But it was contended by the defendant, Hill, that under the doctrine of implied resignation he had ceased to be a member of the legislature and therefore could rightfully hold a position on the State Fish Commission. We acknowledged in the opinion that the doctrine was supported by the weight of authority, that it had been approved by this court in the two cases above cited, and we said that those cases were correctly decided. But in the particular circumstances of the Hill case, we were constrained to hold that the doctrine was not applicable for the reason that to apply it to that case would not achieve its purpose. As we there said, "The virtue of certainty of identification of the public official, which it is claimed this rule produces, is illusory rather than real when one reviews the facts reflected by the record before us." 181 Or 592. Those facts are set out in detail in the opinion. It is sufficient to state here that the record disclosed the unusual situation of a legislator shuttling back and forth over a period of four years between the legislative and executive branches of the government, in such fashion that it was difficult for any one to say at any given time whether he was a member of the legislature, a member of the Fish Commission, or both. Another controlling con-

---

[1] Art III, § 1, Oregon Constitution.

The powers of the Government shall be divided into three separate departments—the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided.

sideration was the passage of an amendatory act in 1937, Oregon Laws 1937, ch 342, now ORS 171.050, which, viewed in the light of then recent legislation and judicial history, was regarded as strong evidence that the legislature, each house of which is the "judge of the election, qualifications, and returns of its own members", Oregon Constitution, Art IV, § 11, intended that the implied resignation doctrine was not to be applied to its members. "The 1937 act," we said, "affirmatively disapproved the rule of presumed resignations, at least so far as a legislative office is concerned." 181 Or 602.

■ Broad language found in the Hill opinion, which may have gone beyond the necessities of the case, is not to be taken as a wholesale repudiation of the doctrine of implied resignation. We were concerned there with a particular situation, and the law of the case is, under familiar principles, limited to the precise question then before the court. The reasons which the court found persuasive against applying the doctrine to that situation are not present here, and, we assume, could scarcely ever arise in any case where the status of a member of the legislature is not involved. The rule of implied resignation is not only the law, but embodies a sound policy and is fully applicable to the facts disclosed by the pleadings in this case.

■ The requirement of Art XV, § 1 of the Oregon Constitution that "all officers except members of the legislative assembly shall hold their offices until their successors are elected and qualified" was not intended to apply where on officer resigns his office before his term has expired but, as was explained by Mr. Justice ROBERT S. BEAN, speaking for the court in *State ex rel Everding v. Simon*, 20 Or 365, 377-378, 26 P 170, it is a

provision which gives an officer a *right* to hold over after the expiration of a fixed term. The court said:

"* * * The right to hold over is derived from the same constitution that imposes the limitation upon the legislature in the creation of the office. The constitution permits a legislative tenure for a fixed term not exceeding four years, and if at the expiration of that period, from any cause such as failure of the legislature to provide for the election of his successor (People ex rel v. Hammond, 66 Cal 654) ; or of the regular appointing power to make an appointment (State v. Howe, 25 Ohio St. 588) ; or of the electoral body to elect (State v. Harrison, 113 Ind 434; People v. Oulton, 28 Cal 44; People v. Stratton, 28 Cal 382; State v. Lusk, 18 Mo 333) ; or the death of the person elected to fill the office before he has qualified (Commonwealth v. Hanley, 9 PaSt 513), no successor has been elected or appointed under an existing law, the incumbent holds over by virtue of the provisions of the constitution until he is superseded by a duly qualified successor who shall have been elected or appointed in the manner provided by law. (People v. Woodruff, 32 NY 355; People v. Batchelor, 22 NY 128; Mecham on Office § 397; State v. Davis, 45 NJL 390; People v. Tilton, 37 Cal 614.)"

Similar provisions are found in the constitutions or statutes of most of the states, and the interpretation implicit in the language just quoted that they do not apply to resignations has been announced expressly in many decisions. *Olmsted v. Dennis,* 77 NY 378; *People v. Keating,* 112 Col 26, 144 P2d 992; *State ex rel Peden v. Valentine,* 198 SW 1006 (Tex Civ App 1917) ; *State ex rel Fares v. Karger,* 226 Ind 48, 77 NE2d 746; *State ex rel Carson v. Harrison,* 113 Ind 434, 16 NE 384; *State v. Page,* 20 Mont 238, 50 P 719; *People v. Barrett,* 365 Ill 73, 5 NE2d 453; *Tooele County v. De La Mare,* 90 Utah 46, 59 P2d 1155, 106 ALR 182;

*Board of Directors v. Blakesley,* 240 Iowa 910, 916, 36 NW2d 751; *Commonwealth ex rel Park v. Kaiserman,* 330 Pa 196, 199 At 143; *State ex rel Stark v. Hines,* 194 Wis 34, 215 NW 447; *State ex rel Strom v. Marsh,* 162 Neb 593, 77 NW2d 163; *State ex rel Bergshicher v. Grace,* 113 Tenn 9, 82 SW 485.

Article XV, § 1 of the Oregon Constitution is derived from a similar provision in the Indiana Constitution (Carey, A History of the Oregon Constitution, p 481). The Indiana court in *State ex rel Fares v. Karger,* supra, announced its construction of the provision in the following language:

"The purpose of the constitutional provision, Art. 15, § 3, supra, in creating and adding the contingent defeasible term has been many times announced by this court. It is well stated as follows: 'The policy of constitutional provisions of that nature is to prevent the happening of vacancies in office except by death, resignation, removal, and the like. State ex rel. v. Harrison, supra.' "

This construction by the highest court of the state of origin of the section should be highly persuasive with this court. It accords with what we have already said on the subject in *State ex rel Everding v. Simon,* supra, and correctly defines the meaning and purpose of the provision.

The plaintiff places much reliance on *Edwards v. United States,* 103 US 471, 26 LEd 314. The case arose in Michigan and was a mandamus to compel a township supervisor to discharge his duty in respect to the levy of a tax. The purpose of the action was to enable the relator to secure payment of a judgment which he had recovered against the township. Edwards' defense was that he had resigned his office. The court held that the resignation had not been accepted and was there-

fore not complete. This appeared to the court to be the
conclusion made necessary by the common law rule in
effect in Michigan that an office could not be laid down
without the consent of the appointing power, a doctrine
discussed *obiter* in *State v. Chadwick,* 10 Or 465. A
similar case, not cited by either party, is *Badger v.
United States ex rel Bolles,* 93 US 599, 23 LEd 991.
The case arose in Illinois, and again the relator was a
judgment creditor endeavoring to collect his debt from
a town. The defendants were officers of the town
constituting a board of auditors charged with the duty
of auditing town accounts. The plaintiff sued to compel
them to audit the accounts. The defense was that the
defendants had resigned and their resignations had
been accepted. The court held that under constitutional
and statutory provisions similar to Article XV, § 1
of the Oregon Constitution the defendants continued
to be officers because their successors had not been
elected or appointed and qualified.

These decisions and others like them have been re-
lied on as authority in other cases and in different cir-
cumstances, by parties claiming that an officer had no
right to resign. They have been distinguished by some
courts on the ground that, although a public official
has an undoubted right to resign, yet, "when the resig-
nation is predicated upon the premise, stated, or which
his conduct may imply, that it is to avoid performing
a specific duty in the interest of a party in whose be-
half such official is legally bound to act, his resigna-
tion, however formally tendered and accepted, will be
regarded as without effect." *People v. Keating,* supra;
*State ex rel Peden v. Valentine,* supra. Or, as the
Illinois court said in *People ex rel McCarthy v. Barrett,*
supra, "the public laws and decisions of this state in-
dicate it to be our policy that an officer may resign

when neither the rights of creditors nor the public convenience prevents, and that upon such resignation, as declared by statute, the office becomes vacant."

It is provided by ORS 236.010: "An office shall become vacant before the expiration of the term if: (1) the incumbent dies, resigns or is removed." Then follow five other causes for vacancies in office, including conviction of an infamous crime. This statute, with some changes not now material, has been part of the law of Oregon since 1854. See Deady's General Laws of Oregon, 1845-1864, p 709.

In *Fehl v. Jackson County*, 177 Or 200, 161 P2d 782, it was held that where an officer was convicted of an infamous crime the office became vacant without the necessity of a removal suit. The court said: "The very nature of some of the 'events' enumerated in Section 81.2003, [now ORS 236.010] *such as death and resignation,* shows that no removal suit was contemplated by the authors of the act and that none is necessary." (Italics added.) 177 Or 207. As the court there indicated, the word "vacant" in the statute imports the same finality in the event of resignation as in the event of death or removal for the commission of a felony. There is no "holding over" after the occurrence of any of these events.

■ We are of the opinion that our statute providing how a vacancy in office may arise is all the answer that need be made to the contention that the common law doctrine that "a public officer can not resign his office without the consent of the appointing power" (Throop on Public Officers, § 409) prevails in Oregon. That this doctrine is inconsistent with the conception of the nature of a public office under the American theory of government is convincingly demonstrated in the

opinion of the court in *State v. Murphy,* 30 Nev 409, 97 P 391. And see *People v. Barrett,* supra.

The great insistence of the Attorney General in argument is that the construction of constitutional and statutory provisions which he would have the court approve is essential to prevent an interregnum and to assure an orderly handing over of an office by an incumbent to his successor. In particular, it is contended that the requirement of ORS 177.010 that the Secretary of State "will deliver over to his successor in office * * * all moneys, books, records and all papers pertaining to his office" may be frustrated if a vacancy is permitted to occur. It is, of course, desirable that there should be continuity in public office. But, as the Supreme Court of Illinois said in answering a similar contention in *People v. Barrett,* supra, "Not even the Constitution can prevent death from vacating a public office * * *. The most that the constitutional provision can accomplish is to bridge the gap between successive office holders, and, so far as possible, protect the public convenience against any hiatus in the occupancy of a public office. Beyond this it is impossible to go, and we do not believe the framers of the Constitution intended the impossible."

■ We are unable to find anything in the statute from which we have quoted that makes it incumbent upon the Secretary of State to perform the duties there delineated before he vacates the office. Indeed, it is not perceived how it is possible for him to do so. He is required to deliver all moneys, etc., "to his successor in office." He can have no successor until he has ceased to occupy the office. Hence, the proposition that before the Secretary of State can quit his office to assume a higher one he must submit his resignation to the Governor, a successor must be appointed and qualify,

and the outgoing Secretary of State must turn over to his successor all moneys, etc., pertaining to his office does not appear to us to be sound.

. Section 11 of Article II of the Oregon Constitution cited by the plaintiff, which makes ineligible to any office of trust or profit a collector or holder of public moneys until he shall have accounted for and paid over according to law all sums for which he may be liable, seems to us to be foreign to the discussion. Mr. Hatfield is not charged with a violation of this provision. In the absence of such a charge we think it has nothing to do with the case.

Entertaining these views, we express no opinion concerning the legal efficacy of Mr. Hatfield's resignation in writing. It is sufficient to say that it was unnecessary.

Other matters have been mentioned in argument which would, perhaps, have received more than passing attention were it not for the necessity of unusual haste in the preparation of this opinion. All of the arguments which have been pressed upon us have been given as full and careful consideration as the limitations of time would permit.

Our conclusion is that the motion of the defendants for judgment on the pleadings should be allowed. We are not prepared to say that Mr. Hatfield was a proper party defendant in this case, but whether so or not, there could be no decision of the question whether Mr. Appling has usurped the office of Secretary of State without first determining whether or not Mr. Hatfield was Governor at the time that Mr. Appling was appointed. It is our judgment that Mr. Hatfield became Governor of the State of Oregon when he took the oath of office on January 12, 1959. By that same action, and at that same instant, he ceased to be Secretary of

State and he was empowered under the constitution to fill the resulting vacancy. The appointment of Mr. Appling was, therefore, in all respects lawful. It necessarily follows that there was no vacancy in the office of Secretary of State at the time of the attempted appointment of Mr. O'Hara by former Governor Holmes, and this action therefore was without legal validity.

The motion for judgment on the pleadings is allowed, and judgment is given that Howell Appling, Jr., is the duly appointed, qualified and acting Secretary of State of the State of Oregon.