Argued July 28, affirmed September 10, reconsideration denied
October 15, petition for review denied November 12, 1975

VOSS, *Appellant, v.* CITY OF ROSEBURG
(No. 74-178), *Respondent.*
539 P2d 1105

*Laurie K. Smith,* Eugene, argued the cause for appellant. With her on the brief was William F. Frye, Eugene.

*Paul E. Geddes,* Roseburg, argued the cause for respondent. With him on the brief were Geddes, Walton, Richmond, Nilsen & Smith, Roseburg.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

Plaintiff was a member of defendant city's police department for over 13 years prior to March 30, 1973. During that month defendant city first suspended plaintiff. It then offered to reinstate him at a reduced rank under certain conditions. Plaintiff, under date of March 30, 1973, submitted a claimed letter of resignation. On May 11, 1973, he demanded reinstatement. He was not reinstated. In February 1974, plaintiff filed this suit for declaratory judgment to determine whether his so-called suspension by the common council had in fact constituted a removal from office, and, if so, whether such removal was void for failure of the city to comply with provisions of the Roseburg City Charter. He further contended that his letter

of March 30, 1973, did not constitute a resignation. The complaint prayed for a declaration that his suspension and termination were void, and demanded reinstatement with back pay. The circuit court entered its decree dismissing the complaint. Plaintiff appeals.

We summarize the facts. During the winter of 1972-73, a dispute arose among the personnel in the Roseburg city police department. The record contains only scant references to its underlying problems. From it we glean that the city council, in late December 1972, discharged the city manager for reasons largely unrelated to this matter and employed Richard Adams, the city recorder, as acting city manager for an indefinite period. Also during the entire period here involved the city had no police chief, but Lieutenant Wuergler served as acting police chief by official designation during that period. It appears that seven dissident policemen comprising one of the factions leveled accusations against three other higher ranking officers, including plaintiff, a sergeant. The friction led to a common council investigation, which culminated with a council meeting on March 14, 1973.

At the meeting, the council by 6-2 vote recommended to the acting city manager that he suspend all ten police officers, including plaintiff. The rationale was, basically, that the department could not function as a working unit so long as either of the feuding factions remained on duty.

The next day, the acting police chief, pursuant to that direction, sent a memorandum to all the affected personnel regarding the suspensions. It read in part:

"Suspension will be in effect until the appointment of the new Chief of Police. At that time he will determine the possibility of reinstatment of the suspended officers.

"Final checks are being prepared and will include all pay coming * * *.

"The suspended officers will be notified when these checks are ready and at that time all city equipment will be turned in and inventoried against that listed as having been issued. It is suggested that this equipment be turned in in such a manner that it can be checked and stored for possible re-issue upon reinstatement."

In accordance with this directive, plaintiff turned in all of his city-owned equipment, and was paid in full. He has not since performed duties nor received compensation as a Roseburg police officer.

On March 26, 1973, acting city manager Adams submitted a letter to the mayor and common council explaining certain staff recommendations formulated in consultation with Desmond Connall, an outside investigator retained by the city. The letter read in part:

"To this date, the Staff, Mr. Connall, nor has the Douglas County District Attorney's Office have [sic] any evidence to substantiate any criminal wrong-doing per the charges and allegations made against the Department and its present personnel.

"The testimony that was received in the course of the investigation did, however, point up many personality conflicts and personnel administrative problems. * * *"

Its recommendations included reinstatement of all ten suspended officers. All except plaintiff were to be restored to their previous rank; however, plaintiff was to be "reduced in grade to Senior Policeman and assigned to position of Juvenile Officer." His pay, however, was not reduced. All the reinstatements were to be conditioned on the officers' acceptance of four conditions, including cessation of all intra-departmental hostilities and any related civil actions, consideration of the investigation as a "closed issue," and agreement that there would be no back pay for the period of suspension. The statement of recommenda-

tions concluded:

> "It is suggested that each of the 10 suspended be asked whether or not they will accept this disposition. If so, then that person be reinstated as indicated. In the event that any of these employees refuses to accept, it is recommended that the Council unanimously vote to grant the Acting City Manager the authority to take necessary action including but not limited to final dismissal."

At the March 26 meeting the council unanimously accepted the recommendations and gave the acting city manager the powers requested. The ten officers were given 48 hours after notification in which to respond.

On March 30, plaintiff, in response to notification of the foregoing, submitted the following letter to the acting chief of police:

"* * * * *

> "Lt. Wuergler:

> "After giving my current situation a great deal of thought personally, and after consulting with my family and other close friends, *I find that I must now offer my letter of resignation.* At the same time, I feel the need to explain my action.

> "I am truly saddened by the recent events concerning the Roseburg Police Department. I feel that the seven officers who originally brought the charges against the department have done a great injustice to the city and her citizens. It is my opinion that while these seven officers like to place the blame of what occurred on others, I feel they should be of a strong enough character to accept the responsibility for their own actions.

> "Ultimately, a man must live with himself. He must if he is going to continue being a sincere and complete man, be able to hold his head high and say to himself and all others around him, I did the right thing. I did not lie, I did not cheat, I

did what I felt was the best for myself, my family, my job, my community and ultimately my country. Right now, I have that feeling, I know in my own heart that I was not wrong in how I conducted myself in the performance of my job.

"The proposed reduction in rank has not really affected my decision. I worked in lower ranks before and have confidence enough in my ability as a professional policeman to not only regain that rank, but to advance even further. *The fact is that I don't feel I want to do this now with the Roseburg City Police Department as it is.*

"* * * * *." (Emphasis supplied.)

At trial plaintiff reaffirmed that the letter was entirely freely and voluntarily written, after full consideration, and specifically that his demotion was not a factor leading to the letter or in bringing this suit. However, at trial he testified concerning his reasons for not accepting reinstatement as follows:

"* * * The news media had published numerous reports of wrong-doing allegedly done by various members of the department. I felt if I accepted the terms of this agreement that I would have no way of—no recourse whatsoever of ever finding out what I was accused of, of clearing my name."

At trial plaintiff made the following contentions:

1) Plaintiff's purported suspension was in fact a removal, and hence invalid for failure to comply with Chapter II-A, Section 3 of the Roseburg City Charter, which requires unanimous approval by the city council to authorize an acting city manager to order removal of a city officer or employe.[①]

---

① Chapter II-A, Section 3 of the Roseburg City Charter provides in part as follows:

"* * * In case of the absence or disability of the city manager, the council may designate a qualified city manager of the city to perform his duties during such absence or

2) Plaintiff did not terminate his own employment since his purported resignation was a coerced reaction to defendant's conduct in offering him reinstatement at reduced rank and subject to the enumerated conditions.

3) Plaintiff's suspension was invalid for failure to comply with Rule X of the Personnel Rules of the City of Roseburg, requiring a notice of suspension to state reasons for and the duration of the suspension.

The trial court found that acting city manager Adams duly and lawfully suspended (as opposed to removed) plaintiff on March 15, and later removed him pursuant to the unanimous common council resolution of March 26. It found it unnecessary to and did not decide whether plaintiff's letter of March 30 constituted a valid resignation.

■■ In our view the initial issue to be resolved is whether plaintiff effectively resigned his position by his letter of March 30, 1973. A resignation by definition constitutes the formal renouncement or relinquishing of an office. Black's Law Dictionary 1474 (4th ed 1951); *Bauer v. Saper,* 133 Ill App 2d 760, 272 NE2d 703, 705 (1971). Once a public official has voluntarily resigned and the resignation has been accepted, an immediate severance from office is effected. 3 Antieau, Municipal Corporation Law 288.21-23, § 2217 (1971). *See also:* 31 Op Att'y Gen 231, 232 (Or 1963); *State ex rel O'Hara v. Appling,* 215 Or 303, 316, 334 P2d 482 (1959); 70 Am Jur 2d 144-45, Sheriffs, Police and Constables § 19; ORS 236.320.

The plaintiff contends only that the letter does not

---

disability; but any officer thus temporarily designated shall have no authority to appoint or remove any city officer or employee, except with the unanimous approval of the council."

constitute a resignation. In *Byrne v. City of St. Paul,* 137 Minn 235, 163 NW 162, 1917F LRA 545 (1917), the Minnesota Supreme Court said:

"It is the contention of plaintiff that the method by which he was taken out of or removed from the service of the city was illegal and void, because in violation of the civil service provisions of the city charter, which provide that no removals from certain branches of the public service shall be made except for cause, and in the manner therein provided, and that because the removal was illegal plaintiff remained the *de jure* officer and was entitled to the compensation prescribed by law. We do not sustain this claim, but concur in the conclusion of the learned trial court, to the effect that by his resignation and subsequent conduct plaintiff voluntarily took himself out of the service, and is now in no position to insist that his rights under the charter were in any way violated. There is no suggestion that the resignation was the result of coercion, that any fraud was practiced upon plaintiff, or that it was exacted or required as a scheme on the part of the department to avoid or circumvent the civil service policy of the city. On the contrary, the act of plaintiff was wholly voluntary, he understood the effect of the resignation, and that the department could accept it and thus retire him from his position at any time it was deemed best for the service. While plaintiff claims that there was no reason for his removal, the cause thereof as determined and acted upon by the department does not appear, and we are bound to assume that the officers so accepting the resignation were acting within and not in violation of the law. 1 Dunnell, Minn. Dig. § 3435.

"It is not important that the resignation was not addressed to the commissioner of public safety, the officer having charge of the particular department. It was addressed to the active head of the department, the health officer, was filed with that

officer and later accepted, in which the commissioner, if he did not authorize the acceptance, fully acquiesced. It was effectual as a voluntary surrender of the position upon acceptance. And since there was no fraud or purpose to set at naught the civil service provisions of the charter, it is conclusive against the present claim of plaintiff. * * *" 137 Minn at 237.

■ Acceptance of a resignation need not be a formal rite; any action evidencing agreement is sufficient. 3 Antieau, Municipal Corporation Law 288.22, § 22.17 (1971). Here the council action of March 26, supra, clearly implied acceptance should plaintiff tender his resignation.

■ The sole argument advanced by plaintiff in support of his contention that the letter did not constitute a resignation is that its submission was a coerced, rather than voluntary, act.

In *Keithley v. Civil Service Bd.*, 11 Cal App 3d 443, 89 Cal Rptr 809 (1970), the California Court of Appeal considered the allegedly coerced resignation of a policeman. The court defined coercion in this context as consent obtained through duress, menace, fraud, undue influence or mistake. There, as here, the only relevant theories were duress and undue influence.

The California court described duress as envisioning "some unlawful action by a party by which one's consent is obtained through fear * * * or threats * * *." 11 Cal App 3d at 450. There is no evidence in the record of any such unlawful action in this case.

According to the California court,

"* * * undue influence consists of the use of excessive pressure by a dominant person over a servient person resulting in the apparent will of

the servient person being in fact the will of a dominant person. [Citation omitted.]

"The undue susceptibility to such overpersuasive influence may be the product of physical or emotional exhaustion or anguish which results in one's inability to act with unencumbered volition. [Citations omitted.] In any event, * * * overpersuasion is generally accompanied by certain characteristic elements which, when simultaneously present in a significant number, characterize the persuasion as excessive. These elements are '(1) discussion of the transaction at an unusual or inappropriate time, (2) consummation of the transaction in an unusual place, (3) insistent demand that the business be finished at once, (4) extreme emphasis on untoward consequences of delay, (5) the use of multiple persuaders by the dominant side against a single servient party, (6) absence of third-party advisers to the servient party, (7) statements that there is no time to consult financial advisers or attorneys.' (*Odorizzi v. Bloomfield School Dist., supra* [246 Cal App 2d 123, 133, 54 Cal Rptr 533 (1966)]." 11 Cal App 3d at 451-52.

Here, there is virtually a total absence of these indicia of undue influence. Plaintiff, by his own admission —both in his letter and as a witness at trial—submitted the letter on a completely voluntary basis after full deliberation. Moreover, we note that the letter on its face purports to explain plaintiff's reasons for resigning, and then states (a) that the proposed reduction in rank was not a consideration, and (b) that he did not wish to work for the department as then constituted. He also so testified at the trial.

There being no substantial evidence of coercion, we find plaintiff's resignation to have been voluntary and effective.

■ Plaintiff contends that at the least he is entitled to pay for the two-week period between his suspension

and resignation because the suspension by act of the council by a 6-2 vote and the resulting notice from the acting city manager was not done in compliance with the City Charter, supra. The trial judge concluded otherwise in a carefully reasoned memorandum[②] holding that the charter provision in question

---

[②] We quote from the trial court's opinion:

"The current and applicable Personnel Rules provide, in pertinent portions:

" 'Rule X.  Suspension

(1)  The City manager may

    (a)  for disciplinary reasons or

    (b)  during an investigation of charges against an employe,

suspend the employe from his position at any time for not more than 30 calendar days, with or without pay.

(2)  The city manager may dismiss the employe on notice of the suspension not later than one day after it takes effect.

The notice shall state

    (a)  the reasons for the suspension and

    (b)  its duration.'

"'* * * * *

"'* * * [T]he same portion of the Charter also provides that one '. . . temporarily designated shall have no authority to appoint or remove any city officer or employe, except with the unanimous approval of the council.'

"Plaintiff argues the words 'appoint or remove' include suspension, or, alternatively, that plaintiff (and others) were not suspended, they were in fact terminated (subject to reinstatement). It is to be noted here that Personnel Rules authorize suspension by the City Manager '. . . during an investigation of charges against an employe . . .', and, the City Manager must give reasons for and duration thereof.

"At the conclusion of the trial, I concluded Mr. Adams was an Acting City Manager. The Council so designated him. Further, I earlier held plaintiff (and others) were suspended. Nothing in the Charter prohibits even an acting manager from suspending employees. A unanimous approval from the Council was not required to suspend. The acting manager could have, in my view, suspended without Council action, and in view of Council action, could hardly have acted otherwise.

had no application to an acting city manager permanently appointed to that position by the council at a time when the office of city manager was vacant. We agree with that ruling. The contention is without merit.

Affirmed.

"While not shown in any detail, the record implies there had been charges of illegalities. An investigation appears to have demonstrated the charges of illegalities were not substantiated. The ultimate conclusions were that personality conflicts and personnel administrative problems were the basic underlying problems.

"Based on the foregoing, the conclusion is persuaded that the Acting City Manager could suspend, and in view of the Council's direction had no choice. The Charter did not preclude these suspensions. * * *"