THOMPSON, *Appellant,*
*v.*
CLATSKANIE PEOPLES PUBLIC UTILITY
DISTRICT et al, *Respondents.*
(No. 22821, CA 9495)

583 P2d 26

James K. Gardner, Hillsboro, argued the cause and filed the brief for appellant.

Paul J. Jolma, Clatskanie, argued the cause and filed the brief for respondents Clatskanie Peoples Public Utility District, Kenneth Erickson, Dennis Nelson, Henry Enbusk and William Armstrong.

John F. Hunnicutt, St. Helens, argued the cause and filed the brief for respondent Jack Minkoff.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Plaintiff, suing on behalf of the taxpayers of the Clatskanie Peoples Public Utility District (PUD) to recover compensation paid to defendant Minkoff as a PUD director, appeals from summary judgments in favor of defendants. The parties agree that the facts are not disputed and that the only question is whether defendants were as a matter of law entitled to judgment. However, their agreements are unsupported by the record, and we reverse and remand.

ORS 18.105(3) provides in relevant part:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

The judgments recite: "The parties stipulated that the matters involved herein were matters of law, there being no dispute as to the facts herein involved", but the "material facts" necessary for a determination of the legal issues are neither completely disclosed in the documentation nor covered by the purported stipulation.

Minkoff was originally elected a director of the PUD sometime prior to October 1, 1968, on which date he was appointed to the Board of County Commissioners of Columbia County. A memorandum opposing plaintiff's earlier motion for summary judgment (which motion was denied)) recites that Minkoff was elected as a director of the PUD and took the oath of office on January 1, 1973; an affidavit in support of the defendants' motion for summary judgment asserts that Minkoff was *reelected* to be a director on November 2, 1972, and took the oath of office. Nothing in the record refutes that, so we conclude that on January 1, 1973 Minkoff purported to enter a term as an elected director of the PUD.

[ 845 ]

We cannot tell from the record when Minkoff was *elected* to the Board of County Commissioners. He was appointed pursuant to ORS 236.210 and subject to Article V, section 16 of the Oregon Constitution.[1] Because 1968 was an election year, and because Minkoff was appointed more than 20 days before that year's general election, he ought to have been a candidate for election to the Board in that election. If he was, and if he was elected, then he took office for a four-year term or for a two-year term, depending upon whether another commissioner was standing for election at the same time (ORS 204.010) on or about January 1, 1969. If he did not run in November, 1968, his statutory term as county commissioner expired on December 31, 1968, but he would have continued in office until his successor was lawfully elected and qualified for the office.

Further, if it is true that Minkoff was *reelected* a director of the PUD in 1972, he must have previously been elected to that office, too, in 1968, for the statutory four-year term beginning January 1, 1969. ORS 261.420.[2] Moreover, because it is admitted that Minkoff claimed the emoluments of both offices until December 27, 1974, he must have stood for reelection as a county commissioner during that six years plus, in addition to standing for election after his appointment.

Even though the record bears the inference that Minkoff was sworn in as a county commissioner *and* as a director on January 1, 1969 *and* on January 1, 1973, the record neither confirms nor denies that. If the inference is correct, there is no basis to determine which oath he took first—or whether he took *both*

---

[1] "* * * if any vacancy occur * * * in any elective office of the * * * county * * *, the same shall be filled at the next general election, provided such vacancy occur more than twenty (20) days prior to such general election."

[2] At this point the amendments changing provisions for election of PUD directors are not relevant. *See* Or Laws 1973, ch 796, § 16; Or Laws 1975, ch 598, § 7.

simultaneously. If it is not correct, there is no basis to tell what were the true facts. There was a "genuine dispute" about "material facts," even though that dispute has heretofore gone unrecognized.

Those unresolved facts have everything to do with Minkoff's liability and might affect the directors' liability. It is conceded that Minkoff's original acceptance of the seat on the county commission operated automatically to vacate his then existing PUD directorship under the "implied resignation" theory of *State ex rel O'Hara v. Appling,* 215 Or 303, 334 P2d 482 (1959). But it is just as true that he may have impliedly resigned his commissionership by later taking an oath as PUD director. Moreover, in the course of six years he might have impliedly laid down his burdens as a director by later taking an oath as county commissioner. That is speculation at this point, but resolution of the facts has never been done and could not be made on this record.

■ Whether Minkoff has to pay back anything and how much he has to pay back depends upon what office he held and when. Minkoff claims that even if he was not entitled to a salary as a *de jure* PUD director, he was entitled to the remuneration he received if he was a *de facto* director because he performed valuable service under color of right. A *de facto* officer is one who "has the possession of an office and performs the duties thereof under color of right, without being actually qualified in law so to act." *Smith v. Jefferson,* 75 Or 179, 187, 146 P 809 (1915). No Oregon appellate court has passed on the question whether a *de facto* officer is entitled to the emoluments of an office when no *de jure* officer claims them.[3] On that question there is a split of authority in other jurisdictions, but the

---

[3]The Oregon Attorney General has twice issued opinions indicating that where a *de facto* officer has performed the duties of the office and there is no *de jure* officer making a claim, the *de facto* officer is entitled to compensation. 1958-60 AGO 146 (1959); 1950-52 AGO 72 (1950). In neither instance, however, did the person claiming compensation as the *de facto* holder of one office hold another lucrative office at the same time.

majority rule is that the *de facto* officer is not entitled to compensation. *See* Annotation, 151 ALR 952 (1944).

■■ In this instance, Minkoff admittedly having received the emoluments of two offices during the same period, the significant legal authority is the Oregon Constitution itself. The prohibition contained in Article II, section 10 cannot be avoided by the application of the common law *de facto* officer doctrine. That Minkoff may have continued to perform the duties of a PUD director—the duties to which the salary of the office is affixed—after he had accepted the office of county commissioner cannot by itself entitle him to retain payments which the constitution prohibits.

■ The *Appling* rule—when a person holding one lucrative office accepts a second lucrative office, the first office is deemed to have been vacated—is necessary to clarify the rights and duties of the person with respect to the two offices. The payments made to Minkoff during the period in question by the PUD and the county were subject to Article II, section 10. Having received public money in violation of the absolute constitutional prohibition, Minkoff would be liable for its return. *See Young v. Gard,* 129 Or 534, 277 P 1005 (1929). All that can fairly be said now is that he was not entitled to receive and retain the salary for both offices.[4]

The second question the parties seek to have resolved is whether payment of Minkoff's salary as a PUD director while he was in violation of Article II, section 10 of the Oregon Constitution gave rise to civil liability of the directors under ORS 294.100. That liability attaches to "[a]ny public official who expends any public money in excess of the amounts, or for any other or different purpose or purposes than authorized by law * * *." Most of the cases construing ORS 294.100 have dealt with expenditures in excess of a budget. *See, e.g., Tuttle v. Beem,* 144 Or 145, 24 P2d 12

---

[4]Minkoff's liability to the county is not in issue here.

(1933). The only case dealing directly with the statute's application to an expenditure not "authorized by law" is *Porter v. Tiffany,* 11 Or App 542, 502 P2d 1385 (1972), *rev den* (1973). There we held that certain expenditures by the Eugene Water and Electric Board amounting to campaign expenditures on ballot measures pertaining to nuclear power were unauthorized by law and that the commissioners who made the payments were liable under the statute. ORS 261.435 authorizes compensation only for "members" of a PUD board.

■ As we have indicated, there is no basis in the record before us to determine whether in fact any PUD money was paid to Minkoff in violation of the statute.[5] We therefore cannot reach the legal issue, and the trial court should not have.

Reversed and remanded.

─────────

[5] One of the defendant directors apparently first became a director on January 1, 1973. The other three were apparently elected in May, 1974; if so, they took office on July 1, 1974, and were directors for only six months before Minkoff resigned. *See* Or Laws 1973, ch 796, § 16.