Argued on demurrer to alternative writ April 21, peremptory
writ allowed April 28, 1966

# PENSE *v.* McCALL ET AL, CORBETT

413 P. 2d 722

*R. Vernon Cook,* Gresham, argued the cause and filed a brief for the plaintiff.

*Louis S. Bonney,* Assistant Attorney General of the State of Oregon, Salem, argued the cause for defendant Thomas L. McCall. With him on the brief was Robert Y. Thornton, Attorney General.

George Van Hoomissen, District Attorney for Multnomah County, Portland, and Willis A. West, Chief Civil Deputy District Attorney, filed a brief for defendant John D. Weldon.

*Pat Dooley,* Portland, argued the cause and filed a brief for the intervenor.

Before PERRY, Presiding Justice, and SLOAN, GOODWIN, DENECKE, HOLMAN, LUSK and SCHWAB, Justices.

LUSK, J.

This is an original proceeding in mandamus in which the plaintiff challenges the right of Alice Corbett to be a candidate for the Democratic nomination for the office of County Commissioner of Multnomah County, Position No. 3, at the primary election to be held on May 24, 1966.

The plaintiff is a resident of and registered voter in Multnomah County and a candidate for the same office sought by Mrs. Corbett. The defendants are Thomas L. McCall, Secretary of State and John D. Weldon, Registrar of Elections for Multnomah County, who performs all the functions of the county clerk of that county in connection with administering the election laws: ORS 246.300. Mrs. Corbett was permitted to intervene.

An alternative writ was issued to which the defendants demurred. The intervenor filed an answer containing an affirmative defense to which the plaintiff demurred. The relief prayed for is a peremptory writ commanding the defendant Registrar of Elections not to include Mrs. Corbett's name as a candidate for county commissioner on the sample and official ballots to be prepared and distributed for the May 24, 1966, primary election, and commanding the defendant Secretary of State not to include in the Voters' Pamphlet material submitted by Mrs. Corbett. The facts are

agreed upon and the question for decision is purely one of law.

The facts are as follows: The last day for filing a declaration of candidacy for a party nomination at the forthcoming primary election was March 15, 1966: ORS 249.260. On March 9 Mrs. Corbett filed with the office of Secretary of State her declaration of candidacy for the Democratic nomination for the office of State Senator, Multnomah County, District 12, Position No. 8. At about five p.m. on March 15, 1966, Mrs. Corbett filed her declaration of candidacy for the Democratic nomination for the office of County Commissioner of Multnomah County with the office of the Multnomah County Registrar of Elections. No formal withdrawal of her first filing was made by Mrs. Corbett until the next day, March 16.

Plaintiff contends that the second filing was void as in contravention of ORS 249.750, which reads:

"No person shall be a candidate for more than one lucrative office to be filled at the same election. However, where a vacancy occurs wherein the unexpired term ends prior to the next primary or general election, the same person is eligible to nomination and election to both the unexpired and the succeeding terms. The name of the candidate may be placed on the ballot in both places."

On behalf of the defendants it is argued that Mrs. Corbett did not violate this section because her declaration of candidacy for the office of Multnomah County Commissioner was an implied withdrawal of her declaration of candidacy for the office of State Senator. They rely, principally, on *State ex rel. O'Hara v. Appling,* 215 Or 303, 334 P2d 482, and *Riley v. Cordell,* 200 Okla 390, 194 P2d 857. In the *Appling* case we held, in accordance with the great weight of

authority, that when Governor Hatfield, having been elected governor during the middle of his term as secretary of state, took the oath of office as governor, he impliedly resigned the former office. *Riley v. Cordell* applied that doctrine to candidacies for nomination for two incompatible offices. It appears that Riley, who was at the time a justice of the Supreme Court of Oklahoma, filed for the Democratic nomination for that office and the next day filed for the Democratic nomination for the United States Senate. Riley contended he could lawfully be a candidate for both offices at the same election. There was no statute prohibiting such multiple candidacies, but the court held that they were contrary to the public policy of Oklahoma, and that by filing for the nomination for United States Senator Riley had impliedly withdrawn his candidacy for the Supreme Court nomination. The rule of resignation of one office by acceptance of another was said to be applicable.

Whether the rule of implied resignation of an office might properly be extended to withdrawal of a candidacy were there no statute to prevent it, is a question we do not now decide, for that rule cannot be applied to the present case without coming directly in conflict with our primary election law. As hereinafter shown, that law provides an exclusive method for withdrawal of a candidacy. *State ex rel. O'Hara v. Appling,* supra, even if otherwise authority for the position of the defendants, is not in point, because no exclusive method of resignation by the Secretary of State was prescribed by statute.

ORS 249.210 provides that an elector may become a candidate for nomination by a political party by filing a declaration of candidacy with the proper official and that such filing "shall be conclusive evidence

that the registered elector is a candidate for nomination or election[①] by his party." ORS 249.221 (1) prescribes what a declaration of candidacy shall contain, including:

"(e) A statement that the candidate is willing to accept the nomination or election.

"(f) A statement that the candidate will qualify if elected."

ORS 249.280 (1) reads:

"A candidate who desires to withdraw after filing his declaration of candidacy or petition shall state his reasons under oath and file them with the official with whom his declaration or petition of candidacy was filed, not later than the sixty-seventh day prior to the date of the primary election. If he does not withdraw, the Secretary of State, county clerk, city clerk, recorder or auditor, as the case may be, shall cause the name of the candidate to be printed upon the official ballot at the primary election. No additional signatures or fees shall be required to make the candidacy complete and effective."

As all declarations of candidacy must be filed not later than 70 days prior to the date of the primary election: ORS 249.260, a candidate desiring to withdraw must do so under the foregoing section not later than three days after the last day for filing. The candidate is required to state his reasons for withdrawal under oath and file them with the official with whom his declaration was filed—in the case of a candidacy for nomination to the State Senate, with the Secretary of State, and in that of a candidacy for Multnomah County Commissioner, with the Registrar of Elections. If a candidate does not withdraw, the

---

[①] "Election" refers to election to a party office.

proper official must cause his name to be printed on the official ballot.

ORS 249.350 provides that the Secretary of State shall, not later than the 61st day before any primary election, furnish to each county clerk a statement showing the state, district or city offices for which candidates are to be nominated and the names and other information concerning all candidates for nominations.

ORS 249.352 requires the county clerk to arrange upon the ballot the names of candidates which have been filed with him and those which have been certified to him by the Secretary of State.

ORS 249.354 (1) (c) provides that the ballot shall state:

"The names of all candidates for nomination for offices to be filled at the primary election whose petitions for nomination or declarations of candidacy have been made and filed as provided by the primary election law and who have not died, *withdrawn* or become disqualified." (Italics added.)

■ Under accepted rules of statutory construction, when the same word or phrase is used in different parts of a statute it will be presumed to be used in the same sense throughout when applied to the same subject matter, in the absence of anything in the statute clearly indicating a contrary intent: *School District No. 17 v. Powell,* 203 Or 168, 185, 279 P2d 492; *Holman Tfr. Co. et al. v. Portland et al.,* 196 Or 551, 563, 249 P2d 175, 250 P2d 929; *In re Norton's Estate,* 177 Or 342, 347, 162 P2d 379, 161 ALR 439; *State ex rel. Eugene v. Keeney,* 123 Or 508, 512, 262 P 943; *James et al. v. City of Newberg et al.,* 101 Or 616, 619, 201 P 212.

■ In view of this rule there can be no doubt what-

ever that under ORS 249.280 (1) the proper officers are directed to cause to be printed upon the official ballot the name of a candidate who has not withdrawn in the manner and mode prescribed by that section, and that the Registrar of Elections of Multnomah County is charged by ORS 249.354 with the same duty in arranging the names of candidates on the ballot. No reason has been suggested in argument, and none occurs to us, why it should be thought that the word "withdraw" in the second sentence of ORS 249.280 (1) and the word "withdrawn" in ORS 249.354 were intended to be used in a different sense than the sense clearly expressed in the first sentence of ORS 249.280 (1).

■■ We do not have the benefit of any legislative history as an aid to construction. It would seem, however, that the requirements respecting the method of withdrawal of a candidacy were adopted, in part at least, to facilitate an orderly administration of the election laws, so that officials concerned would know from the records in their own offices what candidacies had been withdrawn. We think it was never contemplated, for example, that the Secretary of State, in certifying to the Registrar of Elections of Multnomah County the names of candidates for the State Senate who had not withdrawn should first ascertain (no withdrawal under oath having been filed with him) whether any of such candidates had subsequently filed for an office in Multnomah County; or that the Registrar of Elections was under a similar duty with respect to persons who had filed with his office a declaration of candidacy for the Multnomah County Commission. The adoption of the implied withdrawal rule would introduce into the election process confusion which the statutes were intended to avoid. In any event it is plain that the manner of withdrawal described in ORS

249.280 (1) is exclusive.[2] The contention, therefore, that by filing for the office of County Commissioner, the intervenor withdrew her candidacy for the State Senate cannot be approved.

Two other contentions are advanced by the intervenor, though not by the defendants.

■ It is said, first, that a nomination is not a lucrative office and, therefore, ORS 249.750 has no application to a primary election. In a literal sense it is true that a nomination is not a lucrative office, but candidacy for a party nomination is the first step in the process of attaining a lucrative office. In at least two states the courts have held that even in the absence of a statute prohibiting multiple candidacies in a primary election, such candidacies will not be permitted because contrary to public policy: *Riley v. Cordell,* supra; *State ex rel. Fair v. Adams,* Fla, 139 S2d 879, 94 ALR2d 550. We think a candidacy in a primary election comes fairly within the spirit and intent of this provision. Any doubt that there might otherwise be about the matter is dispelled by the second sentence of ORS 249.750, reading:

> "However, where a vacancy occurs wherein the unexpired term ends prior to the next primary or general election, the same person is eligible to nomination and election to both the unexpired and the succeeding terms."

This provision would not have been needed if the statute was not intended to apply to primary elections.

---

[2] The implied withdrawal doctrine is relied on in the intervenor's brief. At the oral argument, however, counsel for the intervenor stated:

"I must admit in all candor, gentlemen, that the statutes do provide a specific method for withdrawal of candidacies for nomination and one of them being, of course, a statement under oath and the doctrine of implied resignation would not fit that situation."

■ The other contention of the intervenor is that Mrs. Corbett never became "a complete and effective" candidate for the nomination for State Senate, because the provision in ORS 249.280 (1) allowing a candidate to withdraw within three days after the last day for filing makes a declaration of candidacy only provisional or contingent, and Mrs. Corbett did, in fact, withdraw within the three-day period. The construction suggested is inadmissible because filing a declaration of candidacy is "conclusive evidence that the registered elector is a candidate for nomination or election by his party": ORS 249.210. The three-day period in which a candidate may withdraw gives him a "locus poenitentiae"; he is, nevertheless, a full-fledged candidate as long as his declaration of candidacy remains unwithdrawn.

It follows that to treat both filings as valid would be to disregard the command of ORS 249.750.

Three possible consequences remain to be considered. One is that intervenor lost her right to be a candidate for either office. This we reject out of hand as being in its nature punitive and not required by a reasonable interpretation of the statute. Another is that the intervenor might in the three-day period after the last day for filing pick and choose between the two candidacies and, having withdrawn one, pursue the other. This we also reject as contrary to the letter, spirit and purpose of the primary election law. Were such a practice to be sanctioned, a candidate might conceivably file for a half-dozen or more offices and, among these, his deadline for selecting the office he desired would be, not 70 days, but 67 days before the date of the primary election, thus, in effect, extending the period for filing three days beyond the statutory time. The purpose of the three-day provision was not

to give the candidate further opportunity to determine the office for which he would become a candidate, but merely to permit withdrawal of a candidacy previously filed. A system of the kind suggested would be capable of use in a manner unfair and greatly inconvenient to other prospective candidates, and was most assuredly not within the contemplation of the legislature. And if every candidate resorted to the practice the result would be chaotic.

The third possibility is to hold the second filing void.

■ Though not expressed in terms, we think the intent of the statute is to prohibit such a second filing. If an elector who had filed for nomination for the State Senate should subsequently attempt to file for nomination for governor without first withdrawing his former declaration of candidacy, the Secretary of State, knowing from his own records of the prior filing, would be justified in rejecting the second declaration: *State ex rel. Fair v. Adams,* supra. While, in the ordinary case, the Secretary of State has a ministerial duty to accept a declaration of candidacy regular on its face (see *State ex rel. Carson v. Kozer,* 126 Or 641, 270 P 513); yet there would be no such duty where the facts showing the illegality of the declaration were known to the official: *State ex rel. v. Snell,* 155 Or 300, 309, 60 P2d 964. Similarly, a second declaration of candidacy actually accepted by the official, but illegal because of the statute, should be declared a nullity.

It is argued that the result of allowing the relief sought by the plaintiff would be to forfeit the intervenor's right to be a candidate for either of the offices involved, and that such a result is to be avoided because the law does not look with favor on forfeitures. But if there is a forfeiture in this case (we do not

decide the question because it is not before us) the intervenor has brought it on herself by her withdrawal in writing of her candidacy for the State Senate. Had she not done so, there would have been no forfeiture, for, under our decision, the intervenor would only have been precluded from becoming a candidate for county commissioner. Her candidacy for the State Senate would have remained unimpaired.

We conclude that a peremptory writ should issue commanding the defendant Registrar of Elections for Multnomah County not to include the name of the intervenor as a candidate for Multnomah County Commissioner, Position No. 3, on the sample or official ballots to be prepared and distributed for the primary election on May 24, 1966, and commanding the defendant Secretary of State not to publish in the Voters' Pamphlet any material that may be furnished him by or on behalf of the intervenor in connection with such purported candidacy.

The writ will become effective immediately.

SLOAN, J., specially concurring.

The reasons expressed by the majority for distinguishing this case from our decision in *State ex rel. O'Hara v. Appling,* 1959, 215 Or 303, 334 P2d 482, are not compatible with my understanding of the decision in that case nor with my reasons for concurring with it. The majority say that the rule of implied resignation or withdrawal cannot "be applied to the present case without coming in conflict with our primary election law." The implied resignation permitted in *O'Hara v. Appling, supra,* was in equal conflict with the laws involved in that case.

The constitutional and statutory limitations and compulsions regarding a person who withdraws from

the office of Secretary of State and assumes "any [other] office of trust * * *" (Article II, Section 10, Oregon Constitution) are equally, if not more, mandatory than the statutes considered in this case. The decisive reason why this court in *O'Hara v. Appling, supra,* along with other courts in similar cases, did not require enforcement of the requirements there involved was to accommodate the overriding policy of certainty and continuity of office. It was said that this rule of certainty was "indispensable for the protection of the public." 215 Or at 310.

If, however, the doctrine of implied resignation were expanded to include implied withdrawal of a candidacy the obvious direct result would be uncertainty and confusion to all of the many persons and officials involved. This would entail detriment rather than benefit to the people that the law is intended to protect.

This difference in the compelling public policies is the only basis upon which I can distinguish this case from *O'Hara v. Appling, supra.* With that exception, I concur in the opinion.