Argued April 27, affirmed June 14, reconsideration denied August 4, petition for review denied September 1, 1976

# THE DALLES CHERRY GROWERS et al,
## *Respondents,*
*v.*
# EMPLOYMENT DIVISION, *Petitioner.*
## (No. 75-T-77, CA 5192)
### 550 P2d 1250

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Kenneth E. Jernstedt,* Portland, argued the cause for respondents. With him on the brief were Nelson D. Atkin, II, and Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

The Dalles Cherry Growers is a cooperative that processes cherries grown in the orchards of its members. Cherry Growers' operations have two distinct components. From late June to early August, Cherry Growers' employes sort, pack and ship fresh cherries. From early September to early spring, Cherry Growers' employes brine and thus produce maraschino cherries. Many of the approximately 275-375 fresh-season employes do not return to work during the brining season, when Cherry Growers employs approximately 75-95 persons.

■ The question is whether Cherry Growers is liable for unemployment compensation payroll tax for those employes who work only during the fresh season. This question, in turn, depends upon whether the fresh-season employes are exempt as agricultural labor within the meaning of the controlling statutes.

ORS 657.045(2)(d) defines exempt agricultural labor as including "all services performed * * * [i]n the employ of * * * a cooperative organization * * * in handling * * * in its unmanufactured state, any agricultural or horticultural commodity * * *." ORS 657.045(3) states certain exceptions; one is the "brining of cherries." Read together, the above parts of ORS 657.045(2)(d) and 657.045(3) provides: (1) services performed in handling fresh cherries do constitute agricultural labor; and (2) services performed in the brining of cherries do not constitute agricultural labor.

■ The rule applicable when both kinds of services are performed is stated in that part of ORS 657.045(3) which provides that agricultural labor does not include

"* * * any of the services enumerated in [ORS 657.045(2)(d)] when performed by anyone also performing services enumerated in this subsection."

Paraphrased, this complicated statutory language provides that, for present purposes, agricultural labor does not include services performed in handling fresh

cherries "when performed by anyone also" brining cherries.

■ The dispute centers on the meaning of "services performed by anyone." Cherry Growers contends, and a referee ruled, that this language focuses on the activities of *employes;* in other words, employes who engage in both exempt activities listed in ORS 657.045(2)(d) (e.g., handling fresh cherries) and non-exempt activities listed in ORS 657.045(3) (e.g., brining cherries) are not agricultural labor. Under this interpretation, Cherry Growers' liability for unemployment compensation payroll tax is limited to those employes who: (1) work only during the brining season; and (2) work both during the brining season and the fresh season.

On appeal, the Employment Division contends that the proper interpretation of "services performed by anyone" should focus on the activities of the *employer;* in other words, if an employer's operations include both exempt activities (e.g., handling fresh cherries) and non-exempt activities (e.g., brining cherries), then none of the employer's employes are agricultural labor. Under this interpretation, Cherry Growers would also be liable for payroll tax for those employes who work only during the fresh season.

■ Our duty, of course, is to attempt to ascertain and give effect to the intent of the legislature in adopting the "services performed by anyone" language in ORS 657.045(3). We find conflicting indications of legislative intent.

The Employment Division relies on the all-encompassing nature of the term "anyone," arguing this term should be read as including employers. Alternatively, the Division contends that "anyone" is sufficiently ambiguous to authorize resort to legislative history. The Division then relies on clear and specific statements of one senator and one lobbyist, made before the Senate Labor Committee, that the

critical language of what is now ORS 657.045(3) was intended to withhold the agricultural-labor exemption from any employer engaged in exempt and non-exempt activities.

In response, Cherry Growers directs its analysis not to "anyone," but to "services performed by anyone." Cherry Growers points out that as consistently used throughout the balance of the Employment Division Law, ORS ch 657, "services performed" and similar language means the services performed by an employe. For example, ORS 657.040 provides in part: "Services performed by an individual for remuneration are deemed to be employment subject to this chapter * * *." Also, ORS 657.035(1) provides in part: "The term employment includes an individual's entire service * * *." *See also,* ORS 657.030, 657.056(1), 657.060, 657.065(1), 657.072(1), 657.080, 657.087, 657.090 and 657.100.

■■   The authorities agree that when a word or phrase is used repeatedly in the same statute it is *presumed* to be used in the same sense absent clear indication of a contrary intent. *Pense v. McCall,* 243 Or 383, 413 P2d 722 (1966). "Services performed" language in ORS ch 657 consistently focuses on the activities of employes; thus, we start with a presumption that "services performed by anyone" in ORS 657.045(3) is used in the same sense. Therefore, the ultimate question, as we see it, becomes whether the statements of a senator and a lobbyist, relied upon by the Employment Division, are a sufficiently clear indication of a contrary intent to overcome this presumption.

We conclude they are not. First, because the Oregon Supreme Court has recently stated that similar comments made during legislative hearings are "of little or no help in determining legislative intent." *Thompson v. IDS Life Ins. Co.,* 274 Or 649, 652-53, 549 P2d 510 (1976). Second, because we think the presumption that draftsmen have been consistent in the intended meaning of the same term can only have a substantial

salutary effect on the legislative drafting process by requiring draftsmen to understand the whole of a law before attempting to change a part of it. In light of this purpose behind the presumption, something more than here relied upon by the Employment Division should be required to overcome it.

Affirmed.

**THORNTON, J.,** specially concurring.

I concur in the result but do so for a different reason.

In my view the statute involved is plain and unambiguous, and therefore we are not authorized to go into its legislative history. ORS 174.010; *Curly's Dairy v. Dept. of Agriculture,* 244 Or 15, 415 P2d 740 (1966); *West Foods, Inc. v. Morgan, Orr,* 16 Or App 613, 519 P2d 1062, Sup Ct *review denied* (1974).

As to the statements by one legislator and one lobbyist, on which the Employment Division relies, a similar issue was raised in *West Foods, Inc. v. Morgan, Orr,* supra, also an unemployment compensation case. There the issue was whether the employe's work on the employer's mushroom operation was "agricultural labor" and thus exempt from the coverage under the law. Extrinsic evidence (statements by a lobbyist) was offered on behalf of the claimant to show the supposed intention of the legislature in enacting a recent amendment of the statute in issue.

We said in *West Foods:*

> "It is our view that ORS 657.045 as it existed during the period involved here is clear and unambiguous and that therefore resort to legislative history is unnecessary to ascertain its meaning. *Franklin v. State Ind. Acc. Com.,* 202 Or 237, 241, 274 P2d 279 (1954); *Umatilla Co. v. City of Pendleton,* 9 Or App 55, 57, 495 P2d 287, Sup Ct *review denied* (1972)." 16 Or App at 618.

I believe this rule should be followed here.