Argued and submitted June 26, 1997; resubmitted En Banc April 8, affirmed June 24, 1998

In the Matter of the Compensation of
Christine M. Falconer, Claimant.
SAIF CORPORATION
and Twin Oaks Care Center,
*Petitioners,*

*v.*

Christine M. FALCONER,
*Respondent.*
(95-06207; CA A94278)

963 P2d 50

David L. Runner, Appellate Counsel, argued the cause and filed the brief for petitioners.

Greg Noble argued the cause and filed the brief for respondent.

DEITS, C. J.

De Muniz, J., dissenting.

**DEITS, C. J.**

Employer petitions for review of an order of the Workers' Compensation Board (Board) in which the Board held that claimant had proved that a neck condition, "torticollis," was compensable under ORS 656.802, the "mental disorder" provisions of the occupational disease law. We affirm.

Claimant worked as a certified nursing assistant at employer's residential care facility in eight-hour shifts. Her schedule was three days on and three days off. She normally cared for eight to ten residents per shift. On March 19, 1995, one of the nurses scheduled to work was absent, but a new employee was there. Claimant was assigned to train the new employee, and the two were assigned a double section consisting of 14 residents. Because the new employee had to be shown the proper procedures, she had to remain with claimant and could not care for any of the residents on her own. Thus, claimant had to complete all necessary duties for 14 residents in the same time that it would normally take to care for eight to ten residents, while completing the new employee's checklist of things to learn. By the end of the day, claimant felt exhausted, tense, irritable and achy. The following day she complained to her supervisor, saying she felt that she and the new employee had been treated unfairly and expressing concern that the new employee might be "scared off."

Claimant had the next three days off and took the time to rest. On the morning of the third day when claimant woke up and rolled over in bed, she felt a sharp stabbing pain in her neck and shoulder. She sought treatment in the emergency room, where she was diagnosed with acute right neck strain and spasm. Claimant was unable to return to work the following day and did not work her scheduled three days or the next three days, which were her scheduled days off. She returned to work and resumed her normal duties after having been off a total of nine days. During this time period, she began treatment with a chiropractor, which lasted about two months, and she filed a workers' compensation claim.

On August 4, 1995, Dr. Arbeene, an orthopedic specialist, conducted an independent medical examination of claimant at employer's request. Claimant reported to him that she had had another incident of neck pain in July when more new employees joined the staff and she had an increased workload. She was treated by her family physician and missed approximately three weeks of work. Arbeene diagnosed "torticollis," a cramping and spasmodic contracture of the neck muscles, which he associated with mental stress and tension from claimant's work environment. In a post-hearing deposition, Arbeene acknowledged that his diagnosis was not a diagnosis of a mental condition or mental disorder, stating that he was not a psychiatrist and had not done any kind of psychiatric examination. He also stated that claimant had other stress factors in her life besides work, but that he had not undertaken any weighing of the relative importance of those stress factors versus the work stress factors in the cause of her condition.

Employer denied claimant's claim for compensability of the torticollis condition. Claimant requested a hearing on the denial. After hearing, the administrative law judge (ALJ) set aside employer's denial. With one member dissenting, the Board affirmed the ALJ's order.

■ The critical statute is ORS 656.802, which provides, in relevant part:

"(1)(a)  As used in this chapter, '*occupational disease*' means any disease or infection arising out of and in the course of employment * * *, including:

"* * * * *

"(B)  Any mental disorder, whether sudden or gradual in onset, which requires medical services or results in physical or mental disability or death.

"* * * * *

"(b)  As used in this chapter, '*mental disorder*' includes any physical disorder caused or worsened by mental stress.

"* * * * *

"(3)   Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"(a)   The employment conditions producing the mental disorder exist in a real and objective sense.

"(b)   The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

"(c)   There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d)   There is clear and convincing evidence that the mental disorder arose out of and in the course of employment." (Emphasis supplied.)

The issue here is what a claimant with a physical disorder must prove to satisfy the requirements in ORS 656.802(3)(c) that there must be "a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community." The Board concluded that the plain language of the statute provides the answer to the statute's meaning. It explained:

"It is a fundamental rule of statutory construction that when a word or phrase is used repeatedly in the same statute it is presumed to have the same meaning throughout absent clear indication of a contrary intent. *Pense v. McCall*, 243 Or 383, 389[, 413 P2d 722] (1966); *Cherry Growers v. Emp. Div.*, 25 Or App 645, 649, [550 P2d 1250,] *rev den* (1976). *See also PGE v. Bureau of Labor and Industries*, 317 Or 606, 611[, 859 P2d 1143] (1993) (use of the same term throughout a statute indicates that the term has the same meaning throughout the statute). With regard to *amended* ORS 656.802, we find no clear indication in the plain language of the statute that the words 'mental disorder' should carry a different meaning in paragraph (3)(c) than they do in paragraph (1)(b). On the contrary, *amended* ORS 656.802(1)(b) provides *'[a]s used in this chapter,*

" 'mental disorder' " includes * * *' (emphasis added), indicating that the statutory definition of 'mental disorder' that follows means the same throughout all of Chapter 656.

"Relying on the plain language of the statute, we construe paragraph (3)(c) of ORS 656.802 in light of, rather than independent of, the definition of 'mental disorder' in paragraph (1)(b). Thus, where the claim is for a mental stress-caused physical disorder, the 'diagnosis' requirement of paragraph (3)(c) may be satisfied by a diagnosis of a stress-caused physical condition that is generally recognized in the medical or psychological community."

The Board held that claimant had proved that her torticollis was a physical disorder caused by mental stress that is generally recognized in the medical or psychological community and that, therefore, claimant had established a diagnosis that satisfied ORS 656.803(3)(c).

Employer assigns error to the Board's conclusion, arguing that, "[i]n essence" the Board concluded that ORS 656.802(3)(c) is automatically satisfied in cases of physical conditions allegedly caused by mental stress and that no psychiatric or psychological diagnosis is required in such cases. Employer contends that that construction of ORS 656.802(3)(c) overlooks the opening clause of ORS 656.802(3), which states: "*Notwithstanding any other provision of this chapter*, a mental disorder is not compensable under this chapter unless the worker establishes all of the following[,]" including a diagnosis of a mental or emotional disorder generally recognized in the medical community. (Emphasis supplied.) Thus, employer argues, proof of a "mental disorder" does not automatically establish that the worker has satisfied the diagnosis requirement of ORS 656.802(3)(c). Instead, employer contends, the statute requires not just a diagnosis that identifies a condition as a "mental disorder" under the statute, but a "particular *quality* of diagnosis" (emphasis employer's)—that establishes that the condition is one generally recognized in the medical or psychological community as a mental or emotional disorder.

We conclude that the text of ORS 656.802 supports the Board's reading of the statute. It clearly states that, "[a]s used *in this chapter*," the term " 'mental disorder' includes

any physical disorder caused or worsened by mental stress." ORS 656.802(1)(b) (emphasis supplied). It follows that when the term "mental disorder" is used in ORS 656.802(3)(c), the definition of mental disorder that is to be used in chapter 656 must be applied. Thus, essentially, ORS 656.802(3)(c) reads:

> "There is a diagnosis of a mental or emotional disorder [including any physical disorder caused or worsened by mental stress] which is generally recognized in the medical or psychological community."

As noted above, employer's and the dissent's position is that subsection (3)(c) requires "not just a diagnosis that identifies a condition as a 'mental disorder' under the statute, but a 'particular quality of diagnosis;' " namely one "generally recognized in the medical or psychological community as a mental or emotional disorder." 154 Or App 521. However, as explained above, that is simply not what the statute says. The purpose of the notwithstanding clause is to make it clear that more than a diagnosis of a mental disorder is needed to establish the compensability of a claim. The requirements of subsections (a) through (d) of section 3 must be satisfied. The notwithstanding clause does not preclude using the definition of "mental disorder" in ORS 656.802(1)(b) in ORS 656.802(3)(c). Under that reading, subsection (3)(c) may be satisfied by a showing that a claimant has been diagnosed with a stress-caused physical disorder that is generally recognized in the medical community. Claimant here established that she was diagnosed with torticollis, which is a physical condition brought on by mental stress and is a diagnosis generally recognized in the medical community. Consequently, the Board was correct in holding that claimant satisfied all of the requirements of ORS 656.802(3).

Although, as discussed above, the text and context of the statute resolves this question, the legislative history and purpose of the statute also support the same conclusion. As the Board notes, the language of subsection (1)(b) that includes a "physical disorder caused or worsened by mental stress" as a "mental disorder" was added by the 1993 legislature to overrule the Supreme Court's decisions in *DiBrito v. SAIF*, 319 Or 244, 875 P2d 459 (1994), and *Mathel v. Josephine County*, 319 Or 235, 875 P2d 455 (1994). Those cases

held that stress-caused physical disorders should be analyzed as accidental injuries under ORS 656.005(7). The legislature added the language to ORS 656.802 to ensure that stress-caused physical disorders were analyzed under the more stringent requirements for an occupational disease claim. Under the dissent's reading of ORS 656.802(3), it would be impossible to establish a compensable claim for a *physical* disorder based on mental stress without there also being a diagnosis of a generally recognized psychological condition. Essentially, this reading of the statute would make subsection (1)(b) meaningless.

■     The remaining questions that must be addressed in this case are whether the requirements of subsections (b) and (d) of ORS 656.802(3) are met. Employer contends that they are not. It asserts that the Board erred in concluding that claimant's increase in workload was not a condition "generally inherent in every working situation" and that the Board erred by failing to apply the requirement that claimant prove by clear and convincing evidence that her mental disorder arose out of and in the course of her employment.

■     We agree with the Board's conclusions on these issues as well. As the Supreme Court held in *Fuls v. SAIF*, 321 Or 151, 894 P2d 1163 (1995), the proper inquiry regarding whether a claimant's mental disorder is the result of "conditions generally inherent in every working situation" is whether the Board's decision is "within the legislative policy that inheres in the statutory term." The Board's assessment of claimant's situation here is consistent with the legislative policy underlying the statute. We also agree with the Board's conclusion that claimant proved that her condition "arose out of and in the course of employment." Accordingly, the Board did not err in concluding that claimant's claim was compensable.

Affirmed.

**DE MUNIZ, J.,** dissenting.

The majority holds that a "stiff neck"[1] is compensable as a mental disorder under the occupational disease law.

---

[1] Torticollis is defined as a "stiff neck." *Stedman's Medical Dictionary*, 1460 (23rd ed 1976).

Although Workers' Compensation Law is often "a world unto itself," I cannot agree that the legislature intended the majority's holding, and, therefore, I respectfully dissent.

Although the majority adequately states the facts, I begin with a brief quote from the majority's factual summary simply to provide an immediate factual context for my analysis of the pertinent statutes.

"On August 4, 1995, Dr. Arbeene, an orthopedic specialist, conducted an independent medical examination of claimant at employer's request. Claimant reported to him that she had had another incident of neck pain in July when more new employees joined the staff and she had an increased workload. She was treated by her family physician and missed approximately three weeks of work. Arbeene diagnosed 'torticollis,' a cramping and spasmodic contracture of the neck muscles, which he associated with mental stress and tension from claimant's work environment. In a post-hearing deposition, Arbeene acknowledged that his diagnosis was not a diagnosis of a mental condition or mental disorder, stating that he was not a psychiatrist and had not done any kind of psychiatric examination. He also stated that claimant had other stress factors in her life besides work, but that he had not undertaken any weighing of the relative importance of those stress factors versus the work stress factors in the cause of her condition."

The relevant portions of the occupational disease law, ORS 656.802, at issue provide:

"(1)(a) As used in this chapter, '*occupational disease*' means any disease or infection arising out of and in the course of employment * * *, including:

"* * * * *

"(B) Any mental disorder, whether sudden or gradual in onset, which requires medical services or results in physical or mental disability or death.

"* * * * *

"(b) As used in this chapter, '*mental disorder*' includes any physical disorder caused or worsened by mental stress.

"* * * * *

"(3) Notwithstanding any other provision of this chapter, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"(a) The employment conditions producing the mental disorder exist in a real and objective sense.

"(b) The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

"(c) There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d) There is clear and convincing evidence that the mental disorder arose out of and in the course of employment." (Emphasis supplied.)

As the majority correctly asserts, the issue is what a claimant with a physical disorder allegedly caused by mental stress must prove to satisfy the requirement in ORS 656.802(3)(c) of "a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community." That issue presents a question of statutory interpretation in which we are required to seek the intent of the legislature by first considering the statute's text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

Claimant contends that "the plain language" of ORS 656.802(1)(b) provides that a "mental disorder" includes any physical disorder caused by mental stress. Therefore, she contends, a claim based on a generally recognized physical disorder caused by mental stress, "by statutory definition," satisfies the requirement for a diagnosis of a mental disorder under ORS 656.802(3)(c).

Employer argues that, "[i]n essence" the Board concluded that ORS 656.802(3)(c) is automatically satisfied in cases of physical conditions allegedly caused by mental stress and that no psychiatric or psychological diagnosis is required in such cases. Employer contends that the construction of

ORS 656.802(3)(c) by the Board and claimant overlooks the opening clause of ORS 656.802(3), which states: *"Notwithstanding any other provision of this chapter*, a mental disorder is not compensable under this chapter unless the worker establishes *all* of the following," including a diagnosis of a mental or emotional disorder generally recognized in the medical community. (Emphasis supplied.) Thus, employer argues, proof of a "mental disorder" does not automatically establish that the worker has satisfied the diagnosis requirement of ORS 656.802(3)(c). Instead, employer contends, the statute requires not just a diagnosis that identifies a condition as a "mental disorder" under the statute but a "particular *quality* of diagnosis" (emphasis employer's)—one that establishes that the condition is a condition generally recognized in the medical or psychological community as a mental or emotional disorder.

I agree with employer. The function of a "notwithstanding" clause is to make the statute an exception to the provision of law to which the clause refers. *Severy v. Board of Parole*, 318 Or 172, 178, 864 P2d 368 (1993); *O'Mara v. Douglas County*, 318 Or 72, 76, 862 P2d 499 (1993). The exception provided in ORS 656.802(3) is complete: "Notwithstanding *any* other provision of this chapter[.]" (Emphasis supplied.) Thus, irrespective of the provisions of ORS 656.802(1), ORS 656.802(3)(c) provides that a mental disorder is not compensable without a diagnosis of a generally recognized mental disorder.

Here, the only diagnosis of a mental condition was given by Arbeene, an orthopedic specialist. He acknowledged that he was not a psychiatrist and did not conduct a psychiatric examination and that his opinion was based on his "feeling about what happened to this individual." His evidence established only that claimant had a stress-induced stiff neck. It did not, as a matter of law, establish a "diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community." The majority is wrong and frustrates the legislative intent by its holding.

Warren, Edmonds, and Haselton, JJ., join in this dissent.