Argued and submitted September 11, 2012, reversed and remanded
May 22, petition for review denied August 15, 2013 (354 Or 61)

In the Matter of the Compensation of
Alan L. Hull, Claimant.

ESTACADA RURAL FIRE DISTRICT #69,
*Petitioner,*

*v.*

Alan L. HULL,
*Respondent.*

Workers' Compensation Board
0801504; A148377

303 P3d 969

George W. Goodman argued the cause for petitioner. With him on the opening brief were Andrew H. Graham and Cummins, Goodman, Fish, Denley & Vickers, P.C. With him on the reply brief were Andrew H. Graham and Cummins, Goodman, Denley & Vickers, P.C.

Benjamin C. Debney argued the cause for respondent. On the brief were Bennett P. Dalton and Guinn & Dalton.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

At issue in this case is whether claimant's stress-related heart attack must be analyzed under the so-called firefighters' presumption of ORS 656.802(4) or instead, under the heightened standard of proof for mental disorders found in ORS 656.802(3). The Workers' Compensation Board (board) applied the firefighters' presumption, and employer seeks judicial review. For the following reasons, we reverse and remand.

The facts, as found by the administrative law judge (ALJ) and adopted by the board, are supported by substantial evidence. Claimant is a fire district chief and has worked for employer for over 30 years. In June 2007, the Clackamas County Sheriff's Office informed claimant that one of his long-time employees had embezzled $1.9 million over several years. The sheriff's office asked claimant to go undercover and to gather evidence against the employee, which claimant agreed to do. Following the employee's arrest, claimant was the subject of public concern and anger over the embezzlement, with some members of the public calling for his removal. Claimant experienced stress as a result of his undercover assignment and the community anger directed at him.

In October 2007, after talking to several people about the embezzlement at a high school football game, claimant was having trouble sleeping. He asked his wife whether she had overheard an individual's comment at the game about the embezzlement, and she responded that she was "sick and tired of living and breathing that embezzlement since July" and had seen what the embezzlement had done to claimant and their family. Claimant began to rub his wife's shoulder when his "arm just sort of went numb." He began to experience chest pain and was taken to the hospital. He was diagnosed with myocardial infarction, more commonly known as a heart attack.

Five medical experts provided opinions concerning the cause of claimant's myocardial infarction: Drs. Greenberg,

Samoil, Semler, DeMots, and Toren. Each doctor agreed that claimant had an underlying coronary artery disease (arteriosclerosis) unrelated to his employment, which contributed to his myocardial infarction. Samoil believed that stress from the embezzlement was a "causative factor" of the myocardial infarction, whereas Greenberg believed that the stress and arteriosclerosis contributed equally to the myocardial infarction. DeMots characterized claimant's "acute stress" during the conversation with his wife about the embezzlement to be "at most a trigger or precipitating factor." Semler and Toren likewise did not exclude claimant's work-related stress as contributing to the myocardial infarction, but they believed that any such contribution was minor.

Claimant filed a workers' compensation claim, contending that his myocardial infarction was a compensable occupational disease, ORS 656.804, which employer denied. Claimant requested an evidentiary hearing and argued to the ALJ that the "firefighters' presumption" under ORS 656.802(4), which presumes that the cause of the condition or impairment is related to the firefighter's employment, applied. In denying compensation, the ALJ determined that claimant's heart attack was caused or worsened by mental stress associated with the embezzlement and treated the claim as a mental disorder claim. *See* ORS 656.802(1)(b) ("'[M]ental disorder' includes any physical disorder caused or worsened by mental stress."). The ALJ concluded that the firefighters' presumption does not apply to claims for a mental disorder and, instead, applied the heightened compensability standard for mental disorders set forth in ORS 656.802(3). In general, that standard requires the claimant to establish that (1) the employment condition producing the mental disorder exists, (2) the employment condition is not generally inherent in every work situation, (3) the diagnosed mental disorder is generally recognized in the medical or psychological community, and (4) there is clear and convincing evidence that the mental disorder arose out of and in the course of employment. ORS 656.802(3)(a) - (d). The ALJ concluded that claimant did not carry his burden of proving that the mental stress, which led to claimant's heart attack, was work related, and affirmed the denial.

Claimant sought review with the board, arguing that the firefighters' presumption applies and that employer did not establish by "clear and convincing medical evidence that the cause of the condition or impairment [was] unrelated to the firefighter's employment" as required by ORS 656.802(4). Employer countered that the firefighters' presumption does not apply, because claimant's myocardial infarction lacks the renal component to qualify as a "cardiovascular-renal disease" as required by ORS 656.802(4). In addition, employer contended that claimant did not establish that his myocardial infarction, which was caused by stress, met the criteria for establishing a compensable mental disorder under ORS 656.802(1)(b) and (3).

A divided board agreed with claimant and reversed the ALJ's decision. In doing so, the majority framed the issues as follows:

"Thus, if claimant was not a qualifying firefighter under ORS 656.802(4), his claimed [myocardial infarction] would be treated as a 'mental disorder' because it is a 'physical disorder caused or worsened by mental stress.' *See* ORS 656.802(1)(b). Claimant would then need to meet the heightened standards of proving a compensable mental disorder as set forth in ORS 656.802(3). Conversely, if analyzed as a 'cardiovascular-renal disease' under ORS 656.802(4), the claim would be presumptively compensable, with the employer required to demonstrate with 'clear and convincing evidence that the cause of the condition or impairment [was] unrelated to the firefighter's employment.'"

The majority reasoned that the firefighters' presumption applies to claimant's myocardial infarction, because, when the legislature originally enacted the firefighters' presumption, it relied on submissions and testimony that considered a firefighter's mental stress to contribute, in part, to presumptively compensable diseases, such as cardiovascular-renal disease. The board also ruled that the heightened standard for mental disorders under ORS 656.802(3) does not apply to workers who meet the firefighters' presumption. The board concluded that, under the firefighters' presumption, claimant's myocardial infarction was compensable as a cardiovascular-renal disease.

On judicial review, in its first assignment of error, employer renews its argument that a myocardial infarction is not a "cardiovascular-renal disease" and further argues, in its second assignment of error, that, when a cardiovascular disease is caused by a stress-related mental disorder, the firefighters' presumption does not apply, but the higher standard set forth in ORS 656.802(3) applies. Claimant responds that, when the legislature enacted the firefighters' presumption, it intended to include heart conditions, such as myocardial infarctions, in the firefighters' presumption. Claimant also contends that the heightened compensability standard set forth in ORS 656.802(3) establishes whether a condition qualifies as an "occupational disease," and that, because the firefighters' presumption presumes that a condition is an occupational disease, it supersedes the need to satisfy the mental disorder standard under ORS 656.802(3). Because we agree with employer's second assignment of error and resolve the case on that basis, we need not address employer's first assignment of error. Instead, for the purposes of our analysis, we will assume that claimant's myocardial infarction is a cardiovascular-renal disease that qualifies for the firefighters' presumption. *See City of Eugene v. McCann,* 248 Or App 527, 533-34, 273 P3d 348 (2012) (declining to address whether "cardiovascular-renal disease" in ORS 656.802(4) requires a firefighter's condition to be a disease of the cardiovascular *and* renal system when case could be resolved on other grounds).

We review the board's order for legal error. ORS 183.482(8)(a). The resolution of this case requires us to interpret ORS 656.802; thus, we apply the familiar methodology of *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993), as amplified in *State v. Gaines,* 346 Or 160, 206 P3d 1042 (2009). Our task is to determine the intent of the legislature when it enacted ORS 656.802, which we glean from the text, context, and legislative history, resorting if necessary to maxims of statutory construction. *Gaines,* 346 Or at 171-72.

To establish a compensable occupational disease, generally, a claimant "must prove that employment conditions were the major contributing cause of the disease." ORS 656.802(2)(a). However, certain conditions or impairments

suffered by a firefighter are presumed to be work-related under ORS 656.802(4), which provides:

"Death, disability or impairment of health of firefighters of any political division who have completed five or more years of employment as firefighters, caused by any disease of the lungs or respiratory tract, hypertension or cardio-vascular-renal disease, and resulting from their employment as firefighters is an 'occupational disease.' Any condition or impairment of health arising under this subsection shall be presumed to result from a firefighter's employment. However, any such firefighter must have taken a physical examination upon becoming a firefighter, or subsequently thereto, which failed to reveal any evidence of such condition or impairment of health which preexisted employment. Denial of a claim for any condition or impairment of health arising under this subsection must be on the basis of clear and convincing medical evidence that the cause of the condition or impairment is unrelated to the firefighter's employment."

If a claimant's condition or impairment qualifies for the firefighters' presumption, the claim cannot be denied unless the employer proves by clear and convincing medical evidence that the cause of the condition was not work-related. The firefighters' presumption is unusual in that it does not place the burden on the worker to establish the work-disease relationship, but rather shifts the burden to the employer to disprove it. *Wright v. SAIF*, 289 Or 323, 332, 613 P2d 755 (1980).

When a firefighter suffers from a physical disorder caused by work-related mental stress, the firefighters' presumption appears to conflict with the heightened compensability standard for mental disorders. "[A]ny physical disorder caused or worsened by mental stress" is a mental disorder, ORS 656.802(1)(b), and a mental disorder is defined as an occupational disease, ORS 656.802(1)(a)(B). Stress-caused physical disorders are not compensable unless the heightened compensability requirements of ORS 656.802(3) are satisfied:

"(3) *Notwithstanding any other provision of this chapter*, a mental disorder is not compensable under this chapter unless the worker establishes all of the following:

"(a)  The employment conditions producing the mental disorder exist in a real and objective sense.

"(b)  The employment conditions producing the mental disorder are conditions other than conditions generally inherent in every working situation or reasonable disciplinary, corrective or job performance evaluation actions by the employer, or cessation of employment or employment decisions attendant upon ordinary business or financial cycles.

"(c)  There is a diagnosis of a mental or emotional disorder which is generally recognized in the medical or psychological community.

"(d)  There is clear and convincing evidence that the mental disorder arose out of and in the course of employment."

(Emphasis added.) "The function of a 'notwithstanding clause' is to make the statute an exception to the provision of law to which the clause refers." *SAIF v. Falconer*, 154 Or App 511, 521, 963 P2d 50 (1998), *rev den*, 328 Or 330 (1999) (De Muniz, J., dissenting); *accord Severy v. Board of Parole*, 318 Or 172, 178, 864 P2d 368 (1993). The notwithstanding clause italicized above makes the heightened compensability standard under ORS 656.802(3)(a) to (d) an exception to any provision in ORS chapter 656. And, because the firefighters' presumption is a provision in ORS chapter 656—indeed, a subsection of the same statute—the heightened compensability standard for mental disorders applies instead of the firefighters' presumption.

The legislative history supports our plain-text analysis. In 1987, ORS 656.802 was amended significantly by House Bill (HB) 2271 to include the compensability standard in ORS 656.802(3).[1] Representative Shiprack, the chair of the House Labor Committee, explained to the Senate Labor Committee the statutory requisites for a worker to establish a compensable mental disorder. During his description of paragraph (b), which requires the worker to establish "conditions other than conditions generally

---

[1]  HB 2271 listed the heightened compensability standard for mental disorders under subsection ORS 656.802(2). Or Laws 1987, ch 713, § 4. In 1990, the legislature renumbered ORS 656.802(2) as ORS 656.802(3). Or Laws 1990, ch 2, § 43.

inherent in every working situation," he explained that the standard would not be different for firefighters as compared to other workers:

> "[Representative Shiprack:] [Paragraph] b says that they've got to be conditions other than those conditions inherent in any, pardon me, in every working situation. So that means that they would have to be something that everyone would, everyone would agree are inherent to what you see everyday in the workplace.

> "[Senator Hannon:] If I may stop you just for a moment, Representative. *Could that same set of standard[s] be used for office worker versus say like a firefighter?* Would the same basis, standard apply in the same workplace?

> "[Representative Shiprack:] The intent there, Senator, is that in the workplace, you are expected to show up on time, you are expected to cooperate, perhaps, with your fellow employees, you are expected to have certain things unrelated to the specific occupations involved. This may also address itself to the fact that perhaps in every, in every experience, you will suffer times of layoff. It is not— *the intent of this is not to say that a firefighter has a more stressful job than someone digging ditches, perhaps, although, occasionally it may be that way.* We didn't want to get into that. *That is not the intent of the House to say that this profession is something, and this isn't.* But there are certain duties in the workplace that are inherent in every job and that's what we're trying to say it here."

Tape Recording, Senate Labor Committee, HB 2271, Apr 23, 1987, Tape 120, Side A (statement of Rep Bob Shiprack) (emphasis added). Rather than explaining that firefighters were held to a different standard, possibly through the firefighters' presumption, Representative Shiprack explained that the bill was not intended to distinguish among the different occupations. The italicized text demonstrates that the legislature intended to apply the heightened standard for mental disorders to all workers with mental disorders, including firefighters, and did not intend to exclude that category of workers based on the firefighters' presumption in ORS 656.802(4).

Claimant argues, that when the legislature originally enacted the firefighters' presumption in 1961, it intended the presumption to include conditions caused or worsened by stress. Claimant relies on the board's summary of the legislative history pertaining to the enactment of the firefighters' presumption. That summary referred to testimony from the Oregon State Fire Fighters Council about how "stress and strain" and extreme temperatures, gas, and smoke connected with firefighting predisposes firefighters to heart disease. Testimony, Senate Labor and Industries Committee, HB 1018, Mar 8, 1961 (statement of Earl Noble, secretary of the Oregon State Fire Fighters Council). Claimant contends that testimony is evidence that the legislature did not intend to apply the heightened compensability standard for mental disorders under ORS 656.802(3) to a firefighter's stress-related claim.

We disagree. The testimony that the legislature heard in 1961 did not include stress caused by everyday work situations that employees may face in any job. The testimony from the Oregon State Fire Fighters Council concerned the emotional and physical strain associated with fighting fires and rescuing people in dangerous situations. The 1961 legislature did not contemplate stress related to everyday work activities. That discussion of "everyday stress" did not occur until 1987, when the heightened compensability standard for mental disorders was added to ORS 656.802. And, as we noted above, the legislature contemplated mental stress claims in *all occupations* and chose not to distinguish firefighters. Accordingly, we conclude that, when a worker who would ordinarily qualify for the firefighters' presumption has a claim for a mental disorder, the compensability standard for mental disorders set forth in ORS 656.802(3) applies.

In this case, the board found, and the parties do not dispute, that claimant's physical disorder—myocardial infarction—was caused or worsened by mental stress. Thus, claimant's myocardial infarction must be treated as a mental disorder, ORS 656.802(1)(b) ("'[M]ental disorder' includes any physical disorder caused or worsened by mental stress."), and must be analyzed under ORS 656.802(3). Therefore, we conclude that the board erred when it applied the firefighters'

presumption under ORS 656.802(4) rather than the mental disorder standard set forth in ORS 656.802(3).

Reversed and remanded.