Argued and submitted June 5, affirmed December 24, 2014

In the Matter of the Compensation of
Tricia A. Batchler, Claimant.

INTEL CORP.,
*Petitioner,*

*v.*

Tricia A. BATCHLER,
*Respondent.*

Workers' Compensation Board
1103982; A152263

341 P3d 837

Eric Miller argued the cause and filed the briefs for petitioner.

Ronald A. Fontana argued the cause for respondent. With him on the brief was Ronald A. Fontana, P.C.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

This workers' compensation case involves a dispute over how long claimant is eligible to receive temporary disability compensation benefits while participating in vocational training programs. Resolving that dispute requires us to interpret two statutes. Under ORS 656.268(10), claimants who participate in vocational training are eligible to receive temporary disability compensation. Another statute, ORS 656.340(12), sets out a maximum of 16 months—which may be extended to a maximum of 21 months at the option of the insurer (or self-insured employer)—for the receipt of such benefits. At issue in this case is whether that maximum applies to the life of a claim, as employer argues, or whether the clock restarts each time a claimant begins a new vocational training program, as claimant argues and as the Workers' Compensation Board (the board) held below. Although we follow a different line of reasoning, we ultimately agree with the board's conclusion that claimant was entitled to a new period of temporary disability compensation when she began her new vocational training program. Accordingly, we affirm the decision of the board.

The relevant facts are undisputed. Claimant has an accepted occupational disease claim for symptoms of pain in her hands and arms. Her claim was accepted by employer, which is self-insured, for bilateral forearm and hand tenosynovitis. That claim was closed on July 11, 2007, and claimant received a permanent disability award for a chronic condition. Claimant received all of the benefits pursuant to that award. She ceased working for petitioner in January 2008.

As part of her return-to-work training plan, claimant received vocational assistance through an Authorized Training Program (ATP) from March 31, 2008 through August 28, 2009. During that 17-month period, in accordance with ORS 656.268(10), employer paid claimant temporary disability compensation.[1] The ATP involved claimant's

---

[1] ORS 656.268(10) provides, in relevant part:

"If, after the notice of closure [of a claim], the worker becomes enrolled and actively engaged in [vocational] training according to rules adopted pursuant to ORS 656.340 and 656.726, any permanent disability payments due for work disability under the closure shall be suspended, and the worker shall receive temporary disability compensation and any permanent

taking classes toward a bachelor's degree at Marylhurst University. The claim was closed on June 30, 2010, with an award of temporary disability compensation for the period of the ATP.

Meanwhile, claimant had separately requested, on January 15, 2010, that the claims administrator accept an additional diagnosis. On July 20, 2010, the claims administrator issued a Modified Notice of Acceptance that accepted the additional condition of "overuse syndrome and tendonitis, bilateral arms." The claim was reopened for purposes of processing the newly accepted conditions.[2] The claim was closed on November 17, 2010.

Employer subsequently referred claimant to a vocational counselor. See ORS 656.340(1) (for the purposes of causing an eligible worker to be provided with "vocational assistance," an insurer or self-insured employer must contact a potentially eligible worker "for evaluation of the worker's eligibility for vocational assistance"). In January 2011, that counselor recommended that claimant be found eligible, based on her newly accepted condition, for additional vocational assistance and training. On July 29, 2011, employer authorized a second ATP for claimant for the period from July 26, 2011 through July 25, 2012. The second ATP involved coursework at Marylhurst University and work experience at the Oregon Department of Corrections.

Employer did not, however, pay claimant temporary disability compensation while claimant participated in the second ATP. Employer contended that claimant had already exhausted her statutory eligibility for such benefits during the first ATP. Claimant requested a hearing on that issue. An administrative law judge (ALJ), in an Opinion and Order dated October 28, 2011, disagreed with employer and awarded claimant temporary disability compensation for the entirety of her second ATP. Employer appealed to the board, which affirmed the ALJ's order.

---

disability payments due for impairment while the worker is enrolled and actively engaged in the training."

[2] Claimant also received temporary disability compensation while she was not enrolled in an ATP. Claimant's entitlement to those benefits is not at issue in this appeal.

Employer seeks review of that order, arguing that the board's ruling misconstrued the applicable statute, ORS 656.340(12), in concluding that claimant had not exhausted her eligibility for temporary disability compensation in connection with the first ATP.

We review the board's order for legal error. ORS 183.482(8)(a). Under ORS 656.268(10), a claimant who is "enrolled and actively engaged in" vocational training is entitled to receive "temporary disability compensation." Another statute, however, sets a limit on how long a claimant may receive that compensation. ORS 656.340(12) provides:

> "Notwithstanding ORS 656.268, a worker actively engaged in training may receive temporary disability compensation for a maximum of 16 months. The insurer or self-insured employer may voluntarily extend the payment of temporary disability compensation to a maximum of 21 months. * * * The costs related to vocational assistance training programs may be paid for periods longer than 21 months, but in no event may temporary disability benefits be paid for a period longer than 21 months."

In this case, the board reached its decision by relying on the last sentence of that subsection and, in particular, its reference to "a period" of time. The board interpreted ORS 656.340(12) to mean that the time limitation on temporary disability compensation applies "to each 'period' in which a worker is 'actively engaged in training.'" Thus, according to the board, a claimant who remains "actively engaged in training" during one "period" is entitled to at least 16 months of temporary disability compensation, even if that claimant previously received temporary disability compensation during a different "period."

When interpreting a statute, we determine the intent of the legislature by considering, first, the text and context of a statute, then any useful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We generally assume that the legislature has given words of common usage their plain, natural, and ordinary meanings. *Bergerson v. Salem-Keizer School District*, 341 Or 401, 413, 144 P3d 918 (2006). The text of a statute, however, "should not be read in isolation but must be considered in context." *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004).

That context includes the entire statutory scheme of which the disputed provision is a part. *Necanicum Investment Co. v. Employment Dept.*, 345 Or 138, 143, 190 P3d 368 (2008). If the legislature's intent remains unclear, we resort to general maxims of statutory construction. *Gaines*, 346 Or at 172.

Both parties focus their statutory analysis on the last sentence of ORS 656.340(12). Claimant argues that that sentence's use of the term "a period" supports her position, which is that the limitations on training-related temporary disability compensation apply to each period of vocational training. Employer argues that the phrase "in no event" supports its position, which is that an absolute limitation on training-related temporary disability compensation applies during the life of a claim.[3] Both arguments focus on specific words and phrases in ORS 656.340(12) rather than the larger context in which those terms appear. ORS 656.340(12), which begins with the phrase "[n]otwithstanding ORS 656.268(10)," is an exception to the general rule established in ORS 656.268(10).[4] Thus, ORS 656.340(12) controls over ORS 656.268(10), but only to the extent that ORS 656.340(12) carves out an exception to the general rule expressed in ORS 656.268(10). *See Severy v. Board of Parole*, 318 Or 172, 178, 864 P2d 368 (1993). We begin our analysis with the text of ORS 656.268(10).

Again, ORS 656.268(10) provides, in relevant part:

"If, after the notice of closure issued pursuant to this section, the worker becomes enrolled and actively engaged

---

[3] Claimant also argues that this case has become moot because, as a result of the board's order, employer issued a notice of closure that did not expressly condition payment of benefits to claimant on the outcome of this appeal. That is, claimant argues that the notice of closure is now an independent source of employer's obligation to pay the temporary disability compensation that are at issue here, so that employer will owe the benefits even if we resolve this appeal in employer's favor. After briefing was completed, the board itself rejected claimant's argument. *Tricia A. Batchler*, 65 Van Natta 1460 (2013). Claimant has not requested that we review that order. We, therefore, reject claimant's mootness argument.

[4] As we have noted, "'[t]he function of a "notwithstanding clause" is to make the statute an exception to the provision of law to which the clause refers.'" *Estacada Rural Fire Dist. #69 v. Hull*, 256 Or App 729, 735, 303 P3d 969, *rev den*, 354 Or 61 (2013) (quoting *SAIF v. Falconer*, 154 Or App 511, 521, 963 P2d 50 (1998), *rev den*, 328 Or 330 (1999) (DeMuniz, J., dissenting)).

> in training according to rules adopted pursuant to ORS 656.340 and 656.726, any permanent disability payments due for work disability under the closure shall be suspended, and the worker shall receive temporary disability compensation and any permanent disability payments due for impairment while the worker is enrolled and actively engaged in the training."

That section of the statute contains two substantive rules. First, it explains the conditions that must exist for a claimant to be eligible for training-related temporary disability compensation: a notice of closure[5] must have been issued and the worker must become enrolled and actively engaged in training in accordance with the Department of Consumer and Business Services's rules. Second, it explains what a worker must do to continue to receive training-related temporary disability compensation: remain "enrolled and actively engaged in the training." After the worker ceases to be enrolled and actively engaged in training, "the insurer or self-insured employer shall again close the claim * * * if the worker is medically stationary[.]" ORS 656.268(10). Temporary disability compensation payments cease once that notice of claim closure issues. *See* OAR 436-060-0040(4). Thus, under ORS 656.268(10), a worker may receive training-related temporary disability compensation for an indefinite period of time as long as she remains enrolled and actively engaged in training.

ORS 656.340(12) provides that "a worker actively engaged in training may receive temporary disability compensation for a maximum of 16 months. The insurer or self-insured employer may voluntarily extend the payment of temporary disability compensation to a maximum of 21 months." Read in isolation, ORS 656.268(10) does not limit

---

[5] An essential function of a notice of closure is to signal the end of an insurer or self-insured employer's obligation to process a claim. The duties involved in processing a claim begin with the receipt of a notice of workplace injury and

"include sending a notice of acceptance, ORS 656.262(6); paying time loss benefits when authorized by an attending physician, ORS 656.262(4)(a); determining eligibility for vocational assistance, ORS 656.340(1); determining whether the claimant has a permanent partial disability, ORS 656.268; and, if so, determining the extent of that disability once the claimant has become medically stationary, ORS 656.268(1)."

*French-Davis v. Grand Central Bowl*, 186 Or App 280, 286, 62 P3d 865 (2003).

a worker's eligibility for training-related temporary disability compensation. But the statutes are reconcilable. ORS 656.268(10) establishes when a worker becomes eligible for training-related temporary disability compensation and provides that the worker is entitled to receive those benefits while the worker is enrolled and actively engaged in training; ORS 656.340(12) says nothing about the conditions of eligibility, but provides a cap on the duration of benefits.

Together, those two statutes establish the following scheme: (1) a worker will become eligible for training-related temporary disability compensation when her claim is closed and she begins an authorized ATP; (2) a worker may receive temporary disability compensation for as long she is "actively engaged" in her ATP; (3) those payments may not, however, continue for more than 16 months during that period of eligibility unless an extension is approved by the insurer or self-insured employer, and in no event for more than 21 months.

For the purposes of this case, there are two important aspects of the above-described scheme. First, nothing precludes a claimant from becoming eligible to receive training-related temporary disability compensation more than once; the only two preconditions to eligibility are a claim closure and participation in an authorized ATP. Second, the limits on the payment of training-related temporary disability compensation apply only after a worker becomes eligible for those benefits. Thus, if a claimant becomes eligible to receive training-related benefits more than once, the limitations in ORS 656.340(12) apply to each of those periods of eligibility separately.

That is exactly what happened in this case. Claimant's claim was reopened to process a newly accepted condition (overuse syndrome and tendonitis), she was determined to be eligible for a new ATP, her claim was closed again in November 2010, and she subsequently became actively engaged in the new ATP. That series of events made her newly eligible for training-related temporary disability compensation subject to the limitations in ORS 656.340(12). Thus, the board correctly determined that claimant is eligible to receive training-related temporary disability

compensation as long as she is "actively engaged" in the ATP and her training period does not exceed the 16-month limit in ORS 656.340(12).

Affirmed.